[Crim. No. 28028. Second Dist., Div. One. June 25, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
DARRYL GRIFFIN, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

James A. Goldstein, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—Defendant was charged with robbery (§ 211, Pen. Code) and three counts of assault with a deadly weapon (§ 245, subd. (a), Pen. Code) and, in connection with each count, that he used a firearm within the meaning of section 12022.5, Penal Code. The People appeal from

order of dismissal based upon order granting motion to suppress pursuant to section 1538.5, Penal Code.

On April 21, in an armed robbery of Harold Schwartz, co-owner of Barnes Wholesale Drug Company in El Segundo, $3,600 worth of personal property, some of it controlled substances, was taken and three employees were assaulted. Immediately thereafter El Segundo police were notified and the robbery was broadcast.

Two weeks later (May 6), Los Angeles police officers in uniform searching for a runaway juvenile, accompanied her mother to the Collins' residence; Eleen Collins answered the mother's knock and opened the door; when asked if the juvenile was there, Eleen answered in the affirmative; at the same time, she looked to the side of the mother in the direction of Officer Faulkner, said "Oh, no," turned and ran from the door leaving it open, grabbed a shoebox (which contained marijuana) and placed it underneath the couch;[1] Officer Faulkner moved closer to the door and observed four or five people in the room, two or three of whom were smoking marijuana; he knew from the smell and the way the cigarettes were rolled and being smoked they were marijuana; upon smelling the odor of burning marijuana and observing two or three of the group smoking marijuana cigarettes, he entered the house—"the first purpose was the juvenile, the second, after observing or smelling the marijuana, was to find it."—he confiscated the shoebox of marijuana, then observed defendant, who was seated, place his hand behind him; when defendant stood up two marijuana cigarettes were found behind him; the juvenile was seated on the couch. Officer Faulkner and the Los Angeles police officers had no knowledge of the robbery of Barnes Drug in El Segundo on April 21.

After police searched the males, one or two officers went to the rear of the house and returned with a girl and her boy friend who had been in bed; the mother pointed to the girl on the couch and identified her as her daughter; the officers then searched the house and one returned from the rear with some controlled substances (barbiturates) and said "Look what we found"; the barbiturates were found in a closed shopping bag in an open closet in the rear bedroom where the couple had been roused out of bed. Arrests were made and defendant was arrested on a drug charge.

---

[1] Eleen testified her first concern was to hide the box which contained marijuana so she would not get into trouble.

At the section 1538.5 hearing the People conceded that the entry, search, seizure of the controlled substances and the arrest of defendant were unlawful. The parties stipulated that when defendant was booked on the drug arrest he was "mugged," and on May 8 the Los Angeles police informed the El Segundo police of the arrest and sent them defendant's "mug" shots; the use of the mug shots resulted in photographic identification and a lineup and a preliminary hearing at which defendant was identified by the victims of the El Segundo robbery of April 21 as one of the robbers. The People conceded that but for the illegal entry and search the police would not have had their suspect.

Based on the People's concession, the trial court ordered the tangible products of the search and seizure and the testimony relative thereto suppressed. The People represented they would present no substantive evidence relative to defendant's "mug" shots. Defendant argued that his identification as the robber by the victims must be suppressed as "fruit of the poisonous tree" because it was discovered by the exploitation of illegal police conduct. The trial court ordered suppressed "All identification testimony by any and all witnesses as a result of the lineup of June 6, 1975, and all identification testimony by witnesses as a result of viewing the defendant at the preliminary hearing."[2]

In *Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407] the United States Supreme Court said: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' [Citation.]"

The record establishes *first,* that in the course of a normal lawfully conducted police investigation, the El Segundo police knew an armed robbery of Barnes Drug had been committed on April 21, and talked with the victims, and since April 21 knew their identity and whereabouts;

---

[2]The judge determined as a matter of law that the unlawful search and seizure of the barbiturates did not fall within the purview of the "pure happenstance" doctrine as discussed in *Lockridge* v. *Superior Court,* 3 Cal.3d 166, 170 [89 Cal.Rptr. 731, 474 P.2d 683]. He commented that the search of the closet "was just a search for the sake of searching"; there was no "Investigation of other crimes. What were they investigating? They weren't investigating anything in that closet."

thus there was never any necessity for police to, nor did they ever search for them. The witnesses were not previously unknown, and the unlawful search that produced the barbiturates resulted neither in the physical discovery of any witness to the robbery nor in the discovery of the existence of any witness who otherwise would never have been known to police. *Second,* at the time the Los Angeles police entered the Collins' residence on May 6, they were unaware that defendant was in the house, in fact, nothing suggests that they were looking for him or even knew defendant or anything about him; and further, they were unaware of the El Segundo robbery or that any controlled substance had been stolen. Thus the entry, search and seizure and arrest of defendant on a drug charge were totally unrelated to the crime (robbery) with which defendant ultimately was charged. Two independent law enforcement agencies were involved—the robbery was being investigated by El Segundo police while Los Angeles authorities made the illegal drug arrest. *Third,* the illegal search of the house and seizure of the barbiturates were made in the course of a police investigation of an entirely unrelated crime; and the search was not directed toward the discovery of any witness to or loot from the robbery.

The following evidence is summarized not in justification of the entry, search or seizure (conceded by the People to be illegal) but to demonstrate that the officers searched the premises in the course of an investigation of a crime unrelated to the robbery. Initially they went to the house to find a runaway juvenile; while Eleen Collins was conversing with the mother, they observed through the open door the commission of narcotic offenses by two or three of the occupants whereupon they entered to find the juvenile and the marijuana. It can hardly be denied that the search of the house, including the closet, albeit illegal, was made in the process of investigating the narcotic offenses committed in the officers' presence; and while searching for narcotics, they came upon the barbiturates.

The circumstances at bench are comparable to those in *Lockridge* v. *Superior Court,* 3 Cal.3d 166 [89 Cal.Rptr. 731, 474 P.2d 683] and *People* v. *McInnis,* 6 Cal.3d 821 [100 Cal.Rptr. 618, 494 P.2d 690]. In our view these cases are dispositive of the issue herein. In *McInnis,* a month after a liquor store robbery defendant was arrested for a violation of the Deadly Weapons Control Law; during booking, mug shots were taken and from them defendant was identified by victims of the robbery which led to his arrest therefor. The People stipulated that the photos were the result of an illegal arrest. The trial court suppressed the gun but refused

to suppress the photographs. As in the case at bench, these circumstances were present in *McInnis*—the identification of defendant by the robbery victim from photographs taken as the result of an illegal arrest led to his connection with a prior robbery; and the illegal arrest was in no way related to the prior robbery, and two independent law enforcement agencies were involved. Said the court at page 825: "As in *Lockridge* [*Lockridge* v. *Superior Court,* 3 Cal.3d 166 (89 Cal.Rptr. 731, 474 P.2d 683)], however, the illegal arrest was in no way related to the crime with which defendant was ultimately charged. Indeed, two independent agencies were involved: the robbery was being investigated by Pasadena policemen, while Los Angeles authorities made the previous illegal arrest. The fact that a tenuous link was forged between the illegal arrest and the robbery is more clearly 'pure happenstance' in the case at bar than in *Lockridge.*"

In *Lockridge* v. *Superior Court,* 3 Cal.3d 166 [89 Cal.Rptr. 731, 474 P.2d 683], the Pesce robbery was unsolved; during the course of a subsequent investigation of crimes totally unrelated to the robbery, a search under an unlawful search warrant produced the Pesces' gun in the possession of defendants. The trial court suppressed the gun but allowed the testimony of the witnesses (Pesces). There was no evidence that without the lead supplied by the gun the police investigation would have connected the defendants with the robbery. Said the court: "Nevertheless, we do not believe that the police connection of petitioners to the Pesce robbery through the illegal discovery of the gun is sufficient to characterize the Pesces' testimony as 'come at by exploitation of that illegality.' [Citation.] [¶] The Pesces were already known to the police as the victims of an unsolved robbery. Their gun was found as the result of a search conducted pursuant to a search warrant which was subsequently determined to be legally insufficient and was made during the course of a police investigation of totally unrelated crimes. That search was not directed toward the discovery of witnesses such as the Pesces. [Citation.] It did not result in the discovery of witnesses at its scene who would otherwise never have been known to the police. [Citation.] It did not lead to the Pesces as the source of further evidence of the crimes the police were investigating. [Citation.] Instead, it was pure happenstance that during an investigation of other crimes, the police came across the gun taken in the Pesce robbery." (P. 171.)

"[P]ure happenstance" as used in *McInnis* and *Lockridge,* means a chance disclosure absent "the expoitation of illegal police conduct,"

which referred to neither the illegal seizure in *Lockridge* nor the illegal arrest in *McInnis* because they were made in the course of an investigation of totally unrelated crimes. In *Lockridge* "during an investigation of other crimes, the police came across the gun," and that was "pure happenstance" even though the search and seizure of the gun were illegal (p. 171); the situation in *McInnis* was similar, with the added circumstance that two independent police departments were involved which made the "tenuous link . . . forged between the illegal arrest and the robbery . . . more clearly 'pure happenstance' . . . than in *Lockridge*." (P. 825.) The court in *McInnis* more fully explained this at page 825, footnote 1: "For cases in which we found evidence to be inadmissible because it was discovered by the exploitation of illegal police conduct, see *Lockridge* v. *Superior Court* (1970) *supra*, 3 Cal.3d at pp. 170-171. See also *Davis* v. *Mississippi* (1969) 394 U.S. 721 [22 L.Ed.2d 676, 89 S.Ct. 1394] (involving fingerprints) and *People* v. *Sesslin* (1968) 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321] (involving handwriting exemplars), in which evidence discovered as a result of illegal police conduct was held to be inadmissible. In both cases, the illegal action of the police was part of the investigation of the *very crime* in which the evidence was discovered; clearly, the connection between the illegal conduct and the crime for which the defendant was prosecuted was not 'pure happenstance.' " (Italics added.) ■ As applied to the case at bench, it was "pure happenstance" that during an investigation of other crimes, the police came across the controlled substances taken in the El Segundo robbery. Police were not looking for evidence in the robbery at the time they went to or entered or searched the Collins' residence, indeed, they were unaware of the existence of the robbery; they went there looking for a runaway juvenile and stumbled onto a pot party where two or three occupants were smoking marijuana which was scattered about the room; it was during an investigation of these narcotic offenses that the search of the premises, including the closet, was made and "the police came across" the barbiturates. And the fact that, as in *McInnis*, two independent law enforcement agencies were involved, made the link between the illegal search and seizure in connection with the narcotics offenses "more clearly 'pure happenstance' " than in *Lockridge*.

Moreover, here the purpose of the exclusionary rule—to deter unlawful police conduct—has been served by the suppression of the narcotics and the evidence of the other crimes police were seeking and found on the Collins' premises. That purpose would not be further advanced by the suppression of the identification testimony of the known

victims of the El Segundo robbery, testimony that unquestionably would have been admissible to establish defendant's guilt of that crime but for the chance disclosure of their connection therewith during a wholly unrelated police investigation. (*Lockridge* v. *Superior Court,* 3 Cal.3d 166, 171 [89 Cal.Rptr. 731, 474 P.2d 683].)

The order is reversed.

Wood, P. J., and Hanson, J., concurred.