[Crim. No. 20497. Feb. 11, 1980.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT JOSEPH TERESINSKI, Defendant
and Respondent.

458

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and William G. Prahl, Deputy Attorneys General, for Plaintiff and Appellant.

D. Lowell Jensen, District Attorney (Alameda), John J. Meehan, Assistant District Attorney, Ralph Countryman, Deputy District Attorney, David J. Levy, City Attorney (Concord), and Kenneth C. Scheidig, Assistant City Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Paul Halvonik, Quin Denvir, State Public Defenders, Gary S. Goodpaster, Ezra Hendon, Chief Assistant State Public Defenders, Richard E. Shapiro, Michael S. Zola, Deputy State Public Defenders, and Lewis F. Shearer for Defendant and Respondent.

Marshall W. Krause, Krause, Baskin & Shell, Krause, Timan, Baskin, Shell & Grant, Ephraim Margolin, Steven Stathatos, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz as Amici Curiae on behalf of Defendant and Respondent.

---

OPINION

**TOBRINER, J.**—The People appeal from an order dismissing charges of robbery. The dismissal follows an earlier order suppressing evidence obtained as a result of the search of defendant's car.

 As we shall explain, a police officer, lacking an objectively reasonable basis for suspecting criminal activity, detained defendant's car. Consequently that detention violates the Fourth Amendment, and both physical evidence of the robbery found in the car and identification testimony procured by exploitation of the illegal detention cannot be admitted into evidence. Because no admissible evidence remained to link defendant to the robbery, we affirm the trial court's order dismissing the charges.

 About 2 a.m., Officer Rocha of the Dixon police force saw an unfamiliar car with three occupants proceeding through the city business district. Because of windshield glare he could not see defendant, the driver, but he thought both passengers were juveniles and surmised that the driver also was a minor. Although the car was proceeding at a lawful speed without any suspicious behavior, the officer signaled the driver to stop. He subsequently explained that he detained the car because "I believed they were juveniles in the car. We have a 10:00 o'clock curfew in Dixon."

 As the car slowed to a stop Officer Rocha observed defendant and the front-seat passenger glance back and reach down. Those gestures led him to believe that the occupants might be hiding alcohol or reaching for a weapon. Defendant alighted from the car, walked toward the police vehicle, and presented his driver's license. The license verified de-

fendant's adult status, and in fact only one occupant of the car was a juvenile.

Rocha told defendant to stay at the rear of the car, walked to the driver's window, and shined his light on the floorboard. He saw a pool of liquid and a beer can under the front seat. Ordering the two passengers out, he then observed a gun holster; and, after questioning, Rocha retrieved a loaded weapon from the floorboard.[1]

A subsequent search of the car produced several beer containers, a baggie of marijuana, and a paper bag filled with bills and change. The money was traced to a Seven-Eleven store that had been robbed earlier that night in nearby Woodland. Defendant and his two passengers were arrested on suspicion of robbery. Mr. Cady, the store clerk who witnessed the robbery, identified photographs of defendant and his companions. Later at the preliminary hearing Cady identified defendant in person.

The trial court ruled that the detention was illegal and granted a motion to suppress, as the fruits of an illegal detention, the physical evidence found in the car, the photographic identification, and the subsequent courtroom identification. Since there remained no evidence linking defendant with the robbery, he ordered the charges dismissed; the People appealed.

▇ We recently defined the constitutional standard for measuring the validity of a detention. In *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957], we stated: "to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation omitted], to suspect the same criminal activity and the same involvement by the person in question."

---

[1]The issues in this case concern the legality of the initial detention. The scope of the search has not been questioned. (Cf. *People v. Superior Court* (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

■ We need only apply that standard to the facts of the present case. The detention here rested upon Officer Rocha's suspicion that defendant and his comrades were violating a city curfew ordinance.[2] Contrary to Officer Rocha's statement, the ordinance does not declare it a crime for minors to be found in public after 10 p.m. It provides that it is unlawful for a minor "to loiter, idle, wander, stroll, or play in or upon the public streets" and other public places between 10 p.m. and 5 a.m. These terms cannot reasonably be construed to encompass defendant's conduct.

■ The word "loiter" in particular bears a sinister connotation: it connotes lingering for the purpose of committing a crime. (*In re Cregler* (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305].) As the court noted in *People* v. *Horton* (1971) 14 Cal.App.3d 930, 933 [92 Cal.Rptr. 666]: "driving along city streets, even at 1:15 in the morning, is not 'loitering.'" Whether or not the terms "idle, wander, stroll, or play," when used in a curfew ordinance, also carry a sinister connotation, those terms are equally inapplicable to the present case. Conceivably one may "idle, wander," or "play" in an automobile, but merely driving along a street in a lawful manner cannot be so described.

■ In sum, Officer Rocha lacked any objectively reasonable basis to suspect that defendant or his passengers were violating the prohibitory language of the ordinance. Accordingly, his detention of defendant was unlawful under the standards established in *In re Tony C., supra,* 21 Cal.3d 888, 893.

---

[2]The ordinance reads: "Sec. 16.2 *Curfew*—Minors not to be in public after 10:00 P.M.; exceptions.

"It shall be unlawful for any person under the age of eighteen years to loiter, idle, wander, stroll, or play in or upon the public streets, highways, roads, alleys, parks, playgrounds, or other public grounds, public places and public buildings, places of amusement and eating places, vacant lots, or other unsupervised places, between the hours of 10:00 P.M. and 5:00 A.M. of the day immediately following; provided, however, that the provisions of this section do not apply when the person is accompanied by his parent, guardian, or other adult person having the care and custody of the person, or when the person is returning directly home from a meeting, entertainment, recreational activity or dance, or when the person is going directly to or returning directly from work.

"A person under eighteen years may obtain food in a cafe after a meeting, entertainment, recreational activity, dance or work after the hour of 10:00 P.M., but must vacate the premises immediately after consuming the food served and proceed directly home." (Ord. No. 6, 1950, § 1.)

"Sec. 16.4 *Curfew*—Minors under eighteen violating curfew regulations.

"Any person under the age of eighteen years violating the provisions of section 16.2 shall be guilty of a misdemeanor and shall be dealt with in accordance with juvenile court law and procedure." (Ord. No. 6, 1950, § 3.)

Although the People have conceded before this court that defendant's conduct did not violate the curfew ordinance, they nevertheless argue that the detention should be upheld on the ground that the officer's action was based on a "reasonable mistake of law." (Cf. *Hill* v. *California* (1971) 401 U.S. 797 [28 L.Ed.2d 484, 91 S.Ct. 1106] (mistake of fact); *Elder* v. *Bd. of Medical Examiners* (1966) 241 Cal.App.2d 246 [50 Cal.Rptr. 304].) Courts on strong policy grounds have generally refused to excuse a police officer's mistake of law. (See, e.g., *People* v. *McKelvy* (1972) 23 Cal.App.3d 1027, 1036-1037 [100 Cal.Rptr. 661].) We need not decide, however, whether under exceptional circumstances an officer's reasonable mistake of law might validate police conduct because in this case the officer's mistake cannot be found reasonable.

The curfew ordinance did not present an obscure or unfamiliar enactment to Officer Rocha, but one that he had enforced on numerous occasions. The plain language of the ordinance clearly does not prohibit a minor from simply being present on the streets of Dixon after 10 p.m., but only prohibits such behavior as "loitering" or "idling" on the streets; the officer's belief that Dixon had enacted a blanket curfew ordinance should have been dispelled by a simple reading of the terms of the enactment. Moreover, several years before the detention in the present case, the Court of Appeal in construing a similar ordinance explicitly held that driving a car at a normal rate of speed down a public street did not violate the ordinance. (*People* v. *Horton, supra*, 14 Cal.App.3d 930.) If we were to find Officer Rocha's mistake of law reasonable under these circumstances, we would provide a strong incentive to police officers to remain ignorant of the language of the laws that they enforce and of the teachings of judicial decisions whose principal function frequently is to construe such laws and to chart the proper limits of police conduct.

Finally, the Attorney General contends that even though the illegality of defendant's detention bars use of physical evidence found in his car, the lower court erred in suppressing the Seven-Eleven clerk's identifications of defendant as a participant in the robbery. The Attorney General further argues that the identifications alone established probable cause and that the order of dismissal therefore should be reversed.

The issue congeals into whether the identification evidence was obtained by "exploitation" of the illegal detention "'or instead by means sufficiently distinguishable to be purged of the primary taint.'" (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83

S.Ct. 407].) ■ In *People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321], we explained that "to remove the taint from evidence obtained directly as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained 'by exploitation of that illegality.'"

■ We find no intervening act in the present case. The officer followed the initial detention with a visual search of the interior of defendant's car—a search that was illegal because of the illegality of the detention. That visual search led to a more thorough search, which turned up the proceeds of the Seven-Eleven robbery. Relying on that evidence, which we have determined to be the product of an illegal search, the officer arrested defendant and his companions for suspicion of robbery and took them into custody. Cady identified the photographs, and subsequently identified defendant in person. All events followed in immediate, logical and causal progression, without any intervening act which could form a basis for finding that the taint of the illegal detention, search and seizure had been so attenuated that it did not infect the later identification testimony.

The Attorney General relies on cases which have permitted use of evidence illegally obtained in investigation of matters unrelated to the crime of which defendant is charged. (See *People* v. *McInnis* (1972) 6 Cal.3d 821 [100 Cal.Rptr. 618, 494 P.2d 690]; *Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166 [89 Cal.Rptr. 731, 474 P.2d 683]; *People* v. *Griffin* (1976) 59 Cal.App.3d 532 [130 Cal.Rptr. 648].) In each of those cases the defendant had been illegally arrested for an unrelated crime, weeks or months after the charged offense had been committed, and a search or mug shot made in connection with the later unrelated arrest served to link defendant to the charged crime. The courts held the evidence admissible on the theory that it was not derived from exploitation of the illegality.

In the present case, defendant was arrested upon suspicion of the robbery of which he is now charged. As the trial court explained "This is not a case of independent agencies investigating independent crimes, nor of one agency investigating a crime and taking the defendant's photograph and then forwarding the photograph to another agency investigating a different crime. The investigation by both agencies re-

lated to the same robbery and the property taken therein. The investigations were each simultaneous and very closely related in time as well as subject." Under these circumstances, we agree with the trial court that the identification testimony derived directly from exploitation of the physical evidence discovered as a result of the illegal detention.

The order of dismissal is affirmed.

Bird, C. J., Mosk, J., and Newman, J., concurred.

MANUEL, J.—I dissent. I would reverse the order of dismissal and direct the trial court to deny the motion to suppress evidence. In my opinion Officer Rocha did not lack an objectively reasonable basis for suspecting that defendant or his passengers were violating the Dixon curfew ordinance (§ 16.2, Dixon City Code). Even if the detention were unlawful, however, the Dixon police officer's conduct does not taint nor require the exclusion of the identification testimony of Colin Cady, the victim of the Woodland robbery, or the exclusion of the photographs taken by the Woodland police during defendant's booking on the robbery charges.

Circumstances short of probable cause to make an arrest may justify an officer stopping pedestrians or motorists for questioning. (*In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957]; *People* v. *Harris* (1975) 15 Cal.3d 384, 388-389 [124 Cal.Rptr. 536, 540 P.2d 632]; *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352, 355 [85 Cal.Rptr. 160, 466 P.2d 704]; *Irwin* v. *Superior Court* (1969) 1 Cal.3d 423, 426-427 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706].) As stated in *Tony C.*, the application of the rules is based on a determination of "'the reasonableness *in all the circumstances* of the particular governmental invasion of a citizen's personal security.' (*Terry* v. *Ohio* [1968] 392 U.S. at p. 19 [20 L.Ed.2d at p. 904])." (21 Cal.3d at p. 892; italics added.)

In the present case there was an abundance of objective facts that justified Officer Rocha's honest and strong belief that the occupants of the vehicle might be in violation of the curfew ordinance. (See *In re Nancy C.* (1972) 28 Cal.App.3d 747 [105 Cal.Rptr. 113].) He observed a car he did not recognize, apparently occupied by juveniles, driving be-

tween 2 and 3 a.m. in the business district of a relatively small town. Although he knew that the curfew law contained a provision exempting juveniles traveling to or from "some lawful business or place or dance," he had no way of determining whether the exception applied without detaining and questioning the occupants of the vehicle. In light of the strong possibility that the exception did not apply, such detention and questioning was fully justified. In my opinion, there can be no question of "the reasonableness in all the circumstances of the particular governmental invasion."

Even if Officer Rocha acted improperly in detaining defendant and his passengers in Dixon, however, only the physical evidence taken from the vehicle should be suppressed. There is no basis whatever for also suppressing the robbery victim's identification of defendant as the person who, with two companions, assaulted and robbed him in the Seven-Eleven store in Woodland. That testimony of the victim Cady was obtained by means sufficiently distinguishable so as to be purged of the primary taint of any illegality that might possibly have inhered in the initial detention. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407]; *Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166 [89 Cal.Rptr. 731, 474 P.2d 683].) Moreover, since that testimony at the preliminary hearing was alone sufficient cause to hold defendant to answer for robbery, the trial court erred in dismissing the charges.

In ruling on the suppression motion, the trial court applied a "but for" test and suppressed not only the physical items found in the car but also all other evidence connecting defendant with the Woodland robbery: "In the case at bar, but for the illegal stop the property of the defendants would not have been seized, they would not have been arrested, their pictures would not have been taken, the witness Cady would not have identified them by name from the mug shots, they would not have been in court and Cady would not have made an in-court identification of them."

A determination, however, that the evidence would not have been obtained "but for" an antecedent illegal detention is only the start of the inquiry. Not "all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that ille-

gality or instead by means sufficiently distinguishable to be purged of the primary taint.'. . ." (*Wong Sun, supra,* 371 U.S. at pp. 487-488 [9 L.Ed.2d at p. 455].)

In *Lockridge v. Superior Court, supra,* 3 Cal.3d 166, 170, after determining that the challenged evidence would not have been obtained "but for" illegal police conduct, this court nevertheless concluded that the police connection of defendant to the charged robbery through the illegal discovery of a gun was not sufficient to characterize the testimony of the victim of the robbery as "'come at by exploitation of that illegality.' (*Wong Sun, supra,* 371 U.S. 471, 488 [9 L.Ed.2d 441, 455])."

If the primary taint was purged in *Lockridge,* a fortiori it was also purged in this case. In *Lockridge* a gun was recovered during an unlawful search; the serial number of the gun led the police to the file of an unsolved robbery and to the victims of that robbery which had taken place two and a half years before; the victims identified photographs of the defendants and, after robbery charges were filed, made a courtroom identification of them at the preliminary hearing. The trial court suppressed the gun but allowed the testimony of the witnesses.

There was no evidence in *Lockridge* that without the lead supplied by the gun the police investigation would have connected the defendants with the robbery. We nevertheless refused to characterize the victims' testimony as obtained by exploitation of the illegal police conduct. We reasoned that the victims were already known to the police as victims of the unsolved robbery; their gun was found as the result of a search in the course of an investigation of a totally unrelated crime; that search was not directed toward discovery of witnesses such as the robbery victims and it did not lead to those victims as the source of further evidence of the crime the police were investigating when they illegally obtained the robbery victims' gun. We held that it was "pure happenstance" that during the investigation of another crime the police came across the gun taken in the robbery. We stated that the purpose of the exclusionary rule, to deter unlawful police conduct, was adequately served by suppressing the gun and the evidence of the other crimes the police were investigating: "That purpose would not be further advanced by suppressing the testimony of the known victims of the. . .robbery; testimony that unquestionably would have been admissible to establish petitioners' guilt of that crime, but for the chance disclosure of their connection therewith during a wholly unrelated police investigation."

This court applied the same principles in *People* v. *McInnis* (1972) 6 Cal.3d 821 [100 Cal.Rptr. 618, 494 P.2d 690] to permit the introduction into evidence of "mug shots" taken after an illegal arrest and used to secure a photographic identification of defendant for a robbery unrelated to the arrest. We held that the photographic identification and the in-court testimony of the robbery victims were not tainted by the previous illegal arrest. In *McInnis*, as in the instant case, two independent agencies were involved. As Justice Mosk pointed out, "The fact that a tenuous link was forged between the illegal arrest and the robbery is more clearly 'pure happenstance' in the case at bar than in *Lockridge*." (6 Cal.3d at p. 825; see also *People* v. *Griffin* (1976) 59 Cal.App.3d 532 [130 Cal.Rptr. 648].)

The circumstances of the present case are very similar to those of *Lockridge*. It was "pure happenstance" that in the course of the detention of defendant and his passengers for investigation of the curfew violation the Dixon police found the coins taken in the Seven-Eleven robbery in Woodland. Officer Rocha was not looking for evidence of the robbery when he detained defendant; at that time Officer Rocha was unaware of the Woodland robbery.

The trial court in the instant case sought to distinguish *Lockridge*. The court said: "This is not a case of independent agencies investigating independent crimes, nor of one agency investigating a crime and taking the defendant's photograph and then forwarding the photograph to another agency investigating a different crime. The investigation of both agencies related to the same robbery and the property taken therein. The investigations were each simultaneous and very closely related in time as well as subject." This analysis mischaracterizes the record.

The Dixon and Woodland Police Departments are independent agencies and they were investigating independent crimes, a possible curfew violation in Dixon and a robbery in Woodland. However, that independent agencies were involved is not the crucial factor; neither is the time span controlling. The thrust of *Lockridge* is that when a crime or, more precisely, victims of crime become known to the police absent illegal conduct on their part and thereafter the defendant's connection with the crime is discovered by chance, the victim-witnesses are not tainted by the circumstances of the chance discovery.

An illustration of the tainting of a victim-witness is provided by *People* v. *Huff* (1978) 83 Cal.App.3d 549 [147 Cal.Rptr. 316], where the record failed to establish that the police would have learned of the charged burglary and defendant's connection with it by means independent of a search which followed an illegal arrest for an unrelated robbery. Unbeknownst to the store owner in *Huff*, defendant left his shop with four suits. The owner checked the slacks rack after defendant left and satisfied himself that nothing was missing. He discovered the loss of the four suits only after the police telephoned him and he went to the police department and was shown the four suits bearing tags from his store. "It is a matter of pure speculation whether Mr. Crosetti [owner] would have discovered his loss in the absence of the telephone call from the police. Even assuming that he would have discovered the loss at some point in time, it remains a matter for speculation whether he would have connected defendant with that loss and whether he would have reported the loss to the police." (83 Cal.App.3d at p. 561.)

In the instant case, not only were the Woodland police cognizant of the Seven-Eleven robbery; within minutes of the robbery they obtained the description of the robbers from Cady, the victim; they also had the observations of a passerby who observed three young men leaving a car and entering the Woodland store at about the time of the robbery. The informant's description of the young men conformed with that given by Cady and the description of the vehicle conformed substantially with that of the vehicle driven by defendant. The information formed part of the bulletin that issued from Woodland just minutes after the Dixon stop and we cannot say, as we did in *Lockridge*, that without the lead supplied by the unlawful Dixon detention the police would not have connected defendant to the robbery in Woodland.

In any event, *Lockridge* is dispositive of the instant case insofar as the admissibility of Cady's testimony is concerned. Likewise, *McInnis* is dispositive of the issue concerning the admissibility of the photographs and Cady's photographic identification of defendant.

The photo taken by the Woodland police is no more tainted by the unlawful detention than is Cady's testimonial evidence; both the photo/photo identification and the testimonial evidence result from the "pure happenstance" discovery of the defendant's connection with the Woodland robbery and here, as in *Lockridge* and *McInnis*, the purpose of the

exclusionary rule would not be served by suppressing either item of evidence.

Clark, J., and Richardson, J., concurred.

Appellant's petition for a rehearing was denied March 20, 1980. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.