[Civ. No. 47971. First Dist., Div. Four. Aug. 28, 1980.]

In re PETER G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
PETER G., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Blair W. Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CALDECOTT, P. J.—The question presented on this appeal relates to the admissibility of statements made by appellant, Peter G., to the police.

Appellant was charged with three counts of attempted robbery, which were found to be true. He was also charged with one count of assault with intent to commit murder and the court found him guilty of the lesser included offense of assault with force likely to produce great bodily injury.

At approximately 11 p.m., on July 22, 1979, Rafael Jimenez, Antonio Lopez Ramirez and Isidro Sanchez were approached by a group of young men who barred their way. The group asked the three for some quarters; this was refused. The group also attempted to sell the three some pills. The group encircled the three and would not let them go. Jimenez knocked some pills out of the hands of one of the group. At that point a fight broke out.

Jimenez was stabbed in his elbow, which began bleeding. Two people jumped Sanchez and he was hurt in his right elbow. Ramirez was stab-

bed in his upper left shoulder, and he saw a young man run away. Jimenez ran to a nearby police station. Ramirez started to follow, then stopped. He felt a screwdriver in his back. Ramirez pulled the screwdriver out of his back and gave it to Jimenez. None of the three could identify the assailants.

Officers Charles Cannon and Joseph Sanchez were on duty at the police station at the time in question. The three came into the station, bleeding and asking for help. Jimenez gave Officer Sanchez a screwdriver and said they had been stabbed with it. Ramirez had been stabbed in the back and had trouble breathing. Everyone went outside. Jimenez pointed to an individual near a hedge. The individual ran and Cannon chased him. The individual crawled under a parked car and was captured. He had a bottle of beer in his hand. The individual was appellant.

Officer Sanchez interviewed appellant. After giving appellant his *Miranda* warnings, appellant stated he understood them and was willing to talk. Appellant discussed the incident with Officer Sanchez basically denying his guilt. At one point Officer Cannon entered the interview room with the screwdriver. Appellant asked what Cannon was doing with his screwdriver. After once again being given his. *Miranda* warnings, appellant stated the screwdriver was his and that he had it earlier that night. He signed a statement to that effect. The screwdriver appellant identified was the one Jimenez had given to Officer Sanchez. It was stained with four inches of blood.

Appellant contends that the statements elicited by the police were unlawfully admitted into evidence.

The prosecution introduced into evidence a tape-recorded statement elicited from appellant on the night of his arrest. This initial admission was followed by two additional statements in which appellant identified and acknowledged the ownership of the screwdriver which had been used to stab Ramirez. These statements together with the screwdriver were also admitted in evidence. Appellant now claims that the purported waiver of his *Miranda* rights prior to the tape-recorded statement must be deemed involuntary and therefore invalid because due to his tender age and intoxication he was incapable of waiving his constitutional rights freely and intelligently. Moreover, appellant contends that the subsequent statements in which he identified the screwdriver

and acknowledged its ownership must be held likewise unlawful because they were the products of the first illegally obtained statement.

█ It is now settled in California that before a confession can be used against a defendant the prosecution has the burden of proving that the statement was voluntary beyond a reasonable doubt and that it was not the product of any form of compulsion or given under promise of reward. (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 602, 608 [147 Cal.Rptr. 172, 580 P.2d 672].) In order to be voluntary, the confession or other incriminating statement must be the product of a rational intellect and free will. (*Blackburn* v. *Alabama* (1960) 361 U.S. 199, 208 [4 L.Ed.2d 242, 249, 80 S.Ct. 274].) The confession or other incriminating statement is not the product of a rational intellect and free will, if the accused's will to resist is overborne. (*Rogers* v. *Richmond* (1961) 365 U.S. 534, 544 [5 L.Ed.2d 760, 768, 81 S.Ct. 735].) An accused's will can be overborne by pressures engendered by physical or psychological coercion on the part of the law enforcement officers (*People* v. *Lopez* (1963) 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16]; *Rogers* v. *Richmond, supra*), or by influence of drug or alcohol (*Townsend* v. *Sain* (1963) 372 U.S. 293, 308-309 [9 L.Ed.2d 770, 782-784, 83 S.Ct. 745]; *People* v. *Lara* (1967) 67 Cal.2d 365, 376 [62 Cal.Rptr. 586, 432 P.2d 202], cert. den. 392 U.S. 945 [20 L.Ed.2d 1407, 88 S.Ct. 2303]; *People* v. *Hurlic* (1971) 14 Cal.App.3d 122 [92 Cal.Rptr. 55]) or by insanity (*Blackburn* v. *Alabama, supra*) that impairs his ability to exercise his rational intellect and free will. If the accused's will is overborne because of impairment of his ability to exercise his rational intellect and free will, it is immaterial whether the impairment was caused by the police, third persons, or the accused himself. Nor is it material that the officers pursued no improper purpose in eliciting the confession or that the facts related by the accused are true. (*Rogers* v. *Richmond, supra*.) The only issue is whether the accused's abilities to reason or comprehend or resist were in fact so disabled that he was incapable of making a free and rational choice. (*Townsend* v. *Sain, supra*.) To determine this overriding issue, the totality of circumstances must be considered (*Reck* v. *Pate* (1961) 367 U.S. 433 [6 L.Ed.2d 948, 81 S.Ct. 1541]; *In re Cameron* (1968) 68 Cal.2d 487, 498 [67 Cal.Rptr. 529, 439 P.2d 633]).

█ The above-stated principles apply with equal (if not greater) force also to juvenile defendants (*Haley* v. *Ohio* (1948) 332 U.S. 596, 599 [92 L.Ed. 224, 228, 68 S.Ct. 302]; *In re Roderick P.* (1972) 7 Cal.3d 801, 811 [103 Cal.Rptr. 425, 500 P.2d 1]; *People* v. *McFarland*

(1971) 17 Cal.App.3d 807, 815-816 [95 Cal.Rptr. 369]) whose free will can be overcome even easier due to their tender age and lack of maturity. While under well settled law a minor, like an adult, may waive his *Miranda* rights if his waiver is knowing and intelligent (*In re Robert H.* (1978) 78 Cal.App.3d 894, 899 [144 Cal.Rptr. 565]; *People v. McFarland, supra,* at p. 816), in determining the voluntariness of the waiver, the age of the minor must be seriously considered and weighed along with other factors such as his mental state, education, degree of intelligence, experience, familiarity with the law, etc. (*In re Dennis M.* (1969) 70 Cal.2d 444, 462-463 [75 Cal.Rptr. 1, 450 P.2d 296]; *People v. McFarland, supra.*) And as emphasized time and again in the determination whether there has been an intelligent waiver on the part of a minor the totality of circumstances must be taken into account and each case must be decided upon the particular facts and circumstances surrounding the case. (*People v. Lara, supra,* 67 Cal.2d 365 at pp. 387, 389; *In re Robert H., supra,* 78 Cal.App.3d 894.)

■ Finally, it bears emphasis that in reviewing the finding of the lower court, this court is obligated to examine the uncontradicted facts and make an independent determination whether the trial court's finding of voluntariness is supported by the requisite quantum of evidence. As stated in *People v. Jimenez, supra,* 21 Cal.3d 595 at page 609: ""As a reviewing court it is our duty to examine the uncontradicted facts to determine independently whether the trial court's conclusion of voluntariness was properly found. . . . In exercising this function the court recognizes that the burden is on the prosecution to show that a confession was voluntarily given without previous inducement, intimidation or threat. . . . [Citations.]" Thus, in making an independent examination of the record to ascertain whether defendant's statements were voluntary we follow a practice of the United States Supreme Court which is both well established. . . and currently adhered to. [Citations.]' (*People v. Sanchez* (1969) 70 Cal.2d 562, 571-572. . .; see *People v. Haydel* (1974) 12 Cal.3d 190, 198. . .; *People v. Randall* (1970) 1 Cal.3d 948, 954. . . .) With respect to conflicting testimony, of course, '. . . we accept that version of events which is most favorable to the People, to the extent that it is supported by the record.' (*Ibid;* accord *People v. Duck Wong* (1976) 18 Cal.3d 178, 187. . .; *People v. Carr* (1972) 8 Cal.3d 287, 296. . . .)"

■ When tested by the foregoing legal standards, the instant record leaves no doubt that although appellant was fully advised of his *Miranda* rights before making his first statement and waived those rights,

such waiver cannot be deemed free and voluntary within the meaning of the law.

An independent examination of the uncontradicted record reveals that appellant was 13 years old and weighed approximately 110 pounds. At the time of his arrest he had an empty bottle of beer in in his hand. During booking he smelled of alcohol. He told the interrogating officer, Joseph Sanchez, that prior to his arrest, he had consumed about nine cans of beer.

As the interrogation commenced, it became clear that appellant was highly intoxicated, at times loud and boisterous and alternating between responsiveness and silence. He was so ill that at times he had "dry heaves" and appeared to be vomiting. Appellant's condition was such that in sitting down he nearly fell out of the chair. After conducting the interview and observing appellant, Officer Sanchez stated in his written report that appellant was very intoxicated, the word "very" was underlined in the police report, and that he was hard to understand. Due to these circumstances the officer recommended that appellant be reinterviewed by the detective bureau for another statement.

In light of this strong evidence showing appellant's heavy intoxication we refuse to attach significance to Officer Sanchez' testimony that from hindsight he came to the conclusion that appellant was not really drunk at the time of the interview but only pretended or faked to be drunk. First of all, there is neither direct nor circumstantial evidence contradicting appellant's statement that on the night of his arrest he consumed approximately nine cans of beer. As the officer himself conceded, nine cans of beer contain so much alcohol that even an adult person would be very intoxicated by consuming such a large quantity of alcoholic beverage. Secondly, it stands also uncontradicted that seeing and observing appellant's demeanor during the interview, Officer Sanchez himself felt that the initial interview of appellant was neither meaningful nor convincing and as a consequence he recommended that appellant be reinterviewed at a subsequent time. In view of this straightforward and unequivocal record Officer Sanchez' later explanation based on sheer speculation carries little or no weight and is insufficient to create a conflict in evidence.

We hold that under the strict scrutiny test laid down in *Jiminez*, the uncontradicted facts appearing in the record, fail to sustain the trial court's holding that after being properly *Mirandized* appellant waived

his constitutional rights freely and voluntarily. An independent examination and evaluation of the uncontroverted evidence leads instead to the inevitable conclusion that due to his tender age and heavy intoxication at the time of the police interview appellant did not possess the requisite free will and rational intellect to waive his *Miranda* rights.

■ While we hold that the admission of appellant's tape-recorded statement constituted reversible error, we are unable to determine from the record before us whether the appellant's spontaneous statement, "what's that cop doing with my screwdriver,"[1] was also erroneously admitted in evidence. ■ As repeatedly emphasized in cases, not all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such case is whether the evidence complained of has been come at by the exploitation of that illegality or by means sufficiently distinguishable to be purged of the primary taint. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 487-488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407]; *People* v. *Teresinski* (1980) 26 Cal.3d 457, 463 [162 Cal.Rptr. 44, 605 P.2d 874]; *People* v. *Caratti* (1980) 103 Cal.App.3d 847, 851 [163 Cal.Rptr. 265].) As observed in *People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321], cert. den. 393 U.S. 1080 [21 L.Ed.2d 772, 89 S.Ct. 850], the degree of "attenuation" which suffices to remove the taint from evidence obtained as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking illegality and evidence in such a way that the evidence is not in fact obtained by exploitation of that illegality. (Accord: *People* v. *Teresinski, supra,* 26 Cal.3d 457, at p. 464.) The defendant's consent, if sufficiently an act of free will to purge the primary taint of the unlawful conduct, may produce the requisite degree of attenuation. (*Wong Sun* v. *United States, supra,* 371 U.S. 471, at p. 486 [9 L.Ed.2d 441, at p. 454]; *People* v. *Prendez* (1971) 15 Cal.App.3d 486, 488 [93 Cal.Rptr. 180].) The evidence can also be attenuated by the defendant in an act of free will which can purge the primary taint of the unlawful invasion. (*People* v. *Bilderbach* (1965) 62 Cal.2d 757, 768 [44 Cal.Rptr. 313, 401 P.2d 921].) ■ Under this doctrine, the evidence is sufficiently attenuated if it was obtained by an *independent voluntary act by the appellant which is distinguishable from the initial illegality.* (*People* v. *Caratti,*

---

[1] Another witness testified appellant's statement was "what are you doing with my screwdriver."

*supra*, 103 Cal.App.3d 847, at p. 852; see also *People* v. *Eastmon* (1976) 61 Cal.App.3d 646, 653 [132 Cal.Rptr. 510].)

It is, of course, well recognized that the issue whether the taint flowing from the illegal police conduct had been adequately purged or dissipated is a factual matter which ought to be determined by the trier of fact. (*People* v. *Sesslin, supra*, 68 Cal.2d 418, at p. 429.) Consequently, upon retrial of the case the trial court should make an independent determination based upon the foregoing legal guidelines and the evidence to be presented by the parties whether appellant's spontaneous statement acknowledging the ownership of the screwdriver constituted a sufficiently free, voluntary act which attenuated or purged the primary taint of the illegal police conduct or whether his statement was the result of a police ploy inducing him to make further incriminating statements by bringing in and exhibiting the screwdriver in his presence.

In view of our conclusion the additional issues raised by appellant need not be decided.

The judgment is reversed.

Rattigan, J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 22, 1980. Clark, J., was of the opinion that the petition should be granted.