[Crim. No. 34161. Second Dist., Div. Five. Dec. 4, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ALLEN THOMAS, Defendant and Appellant.

COUNSEL

James E. Blatt, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Weisman and Thomas L. Willhite, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUS, P. J.—An information charged defendant with one count of possession of heroin for sale (Health & Saf. Code, § 11351, subd. (a)). Following the trial court's denial of his motion to quash and traverse the search warrant (Pen. Code, § 1538.5), he pleaded guilty. He appeals from the ensuing judgment.

FACTS

On February 14, 1978, the Los Angeles police made a warrantless arrest of one Anthony Tapia on a charge of possession of heroin. A body search turned up an address book containing the notation: "Richard 11118 Victory Bl. Apt. #4." That address is near the corner of Victory Boulevard and Vineland Avenue, where Tapia had been picked up.

On February 21, 1978, Officer Ronald Whitt interviewed the apartment manager at 11118 Victory Boulevard and learned that apartment

4 was rented by defendant Richard Thomas and his wife Deborah. He obtained descriptions of the couple and of their car. He then viewed the car, learned its license number, made a check through Department of Motor Vehicles and police channels and found that both defendant and his wife had a number of prior arrests for possession of heroin and possession of heroin for sale.

From February 27 through March 7, 1978, Officer Whitt and other officers maintained a surveillance of defendant's apartment. During this period they saw various people make brief, five- to ten-minute visits to the apartment; however, due to inclement weather the officers were unable to get good descriptions of most of these visitors.

On March 6, 1978, officers maintaining the surveillance observed a blue 1967 Volkswagen drive up in front of the apartment; two men left the car, entered the apartment, and returned about five minutes later. A check of the car's license number revealed an outstanding felony warrant—possession of heroin—for the registered owner, James McCraw, Jr. On March 7, 1978, Officers Quagliana and Duehring saw a couple pull up in a car and enter defendant's apartment. Five to ten minutes later the couple emerged and drove off on Victory Boulevard; the officers followed. The driver behaved erratically, was unable to maintain a constant speed and once briefly drifted into oncoming traffic. After driving a short distance, he pulled over at Victory Boulevard and Cartwright Avenue. The officers, both of whom were narcotics experts, approached the couple and noted that their pupils were pinpointed and their right forearms bore fresh puncture wounds. The officers believed them to be under the influence of an opiate, probably heroin, and placed them under arrest. Both the man, Richard D'Amico, and the woman, Cynthia Paepke, were charged with being under the influence of an opiate.

On March 8, 1978, Officer Whitt appeared before a magistrate and executed an affidavit in support of the issuance of a warrant to search defendant's apartment and automobile. The affidavit and its attachments contained all of the information related above, defendant's and his wife's past records, plus the details of the February 14 arrest of Tapia. Executing the warrant, police searched defendant's apartment and car that evening and discovered over 70 grams of heroin and various related paraphernalia.

### DISCUSSION

Defendant contends: (1) The search warrant was issued upon an insufficient showing of probable cause; and (2) the evidence against him was the "fruit" of an illegal arrest.

Defendant's probable cause argument has two parts. ■ He first argues that the affidavit offered in support of the warrant fatally failed to connect him with criminal activity in a way which would justify the surveillance. Indeed, he contends that this was the "greatest single failure of Investigator Whitt's affidavit." Defendant is incorrect: the issue of illegally triggered motivation aside, the police do not have to justify a routine surveillance, consisting of observations of events occurring in plain sight, made from a place where police officers have a right to be: such activities are simply not a "search" in the constitutional sense. (*Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 634 [108 Cal.Rptr. 585, 511 P.2d 33].)

■ Defendant next argues that the affidavit lacked sufficient detail to support a finding of probable cause. We disagree. In issuing a search warrant, the "standard of probable cause is whether the affidavit states facts that make it substantially probable that there is specific property lawfully subject to seizure presently located in the particular place for which the warrant is sought. [Citations.]" (*People* v. *Cook* (1978) 22 Cal.3d 67, 84, fn. 6 [148 Cal.Rptr. 605, 583 P.2d 130].) ■ ■■■
■ The officer's observations during the surveillance, particularly the observations of D'Amico and Paepke immediately following their brief visit to defendant's apartment, combined with the facts of defendant's past record,[1] provide ample support for the "'strong suspicion' of the existence of contraband" necessary to the issuance of a search warrant. (*People* v. *Watson* (1979) 89 Cal.App.3d 376, 385 [152 Cal.Rptr. 471].) There was a sufficient showing of probable cause.

■ The final argument is that the warrant and ultimately the evidence against defendant are the "poisoned fruit" of Anthony Tapia's arrest, which defendant contends was illegal. ■ Defendant has standing to complain of a violation of Tapia's Fourth Amendment rights. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 155 [98 Cal. Rptr. 649, 491 P.2d 1].)

---

[1] A suspect's past criminal record is a proper factor to consider in determining whether probable cause to search exists. (*People* v. *Govea* (1965) 235 Cal.App.2d 285, 296 [45 Cal.Rptr. 253].)

■ As previously noted the facts concerning Tapia's arrest are set forth in an attachment to the affidavit in support of the search warrant. Defendant argues persuasively that the arrest was illegal and the People do not contend otherwise. We therefore assume the correctness of defendant's premise. It does not, however, follow that the entire investigation is tainted.

■ Defendant's argument is simply that "but for" Tapia's illegal arrest the police would not have undertaken to investigate him by obtaining his address, discovering his prior record and surveilling his residence. Granted that this is so, it is not the rule that evidence must necessarily be suppressed if it would not have come to light but for the illegal actions of the police. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407].) The question is, rather, whether the evidence was acquired by exploitation of the initial illegality or through means sufficiently "attenuated as to dissipate the taint." (*Nardone* v. *United States* (1939) 308 U.S. 338, 341 [84 L.Ed. 307, 312, 60 S.Ct. 266].) Of course what constitutes "exploitation" on the one hand and what fact or facts will lead a court to say that the taint has become attenuated, cannot be determined by pressing a button: the answer depends on reason and precedent.

■ While we fully recognize the danger of generalizations, it does seem safe to say that where illegal police conduct merely suggests that a particular person should be investigated, a legally conducted investigation is then undertaken and, in the course thereof, probable cause to make an arrest or secure a search warrant is obtained through the independent acts of the suspect and others, the taint is dissipated. This was recently recognized in *People* v. *Teresinski* (1980) 26 Cal.3d 457, 464 [162 Cal.Rptr. 44, 605 P.2d 874] where the court explained, quoting *People* v. *Sesslin* (1968) 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321], that "to remove the taint from evidence obtained directly as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained 'by exploitation of that illegality.'"[2] Here we do

---

[2]A good illustration is furnished by the facts in *Mann* v. *Superior Court* (1970) 3 Cal.3d 1 [88 Cal.Rptr. 380, 472 P.2d 468]. There, observations of the interior of petitioner's home, gained from an illegal vantage point, motivated police to knock on the front door. Invited to enter they were "greeted with a strong odor of marijuana smoke...," from which point it was all downhill. The Supreme Court held that the consent to enter dissipated the taint of the illegal view into the residence, although it was obvious that it was the view which motivated the police to seek consent to enter.

not hesitate in holding that it was the interactions between defendants and their visitors which provided the necessary break in the causal chain.

Affirmed.

Stephens, J., and Hastings, J., concurred.