[Civ. No. 53928. First Dist., Div. Three. Apr. 7, 1982.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
STEFAN CONSTANTINE NEGOESCU, Real Party in Interest.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Grannucci and Ronald E. Niver, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Geoffrey A. Braun for Real Party in Interest.

**OPINION**

**BARRY-DEAL, J.**—This petition by the People challenges a trial court ruling that the prospective testimony of Douglas Welsch is tainted by the illegal arrest of Venita Ryan and search of her purse. The trial court suppressed the prospective testimony, and the People seek a writ pursuant to Penal Code section 1538.5, subdivision (o), to reverse that ruling. We issue writ of mandate.

On August 27, 1979, while investigating a suspected fencing operation, Officer Daniel McTeague observed Peter Welsch getting into a car with Venita Ryan and three children. McTeague had been advised that there was an outstanding arrest warrant for Peter Welsch, and he stopped the car to arrest Peter Welsch on the warrant. During the stop he ordered Venita Ryan out of the car and arrested her for being under the influence of narcotics. The trial court ruled that arrest unlawful, a ruling petitioner does not challenge.

While under arrest both Peter Welsch and Venita Ryan consented to a search of the vehicle, stating that the officer would find nothing. The trial court ruled that the consents were properly obtained. In searching

under the driver's side of the front seat, Officer McTeague found two masks and two pairs of gloves. After being admonished of his rights, Peter Welsch told Officer McTeague that anything he found in the car belonged to his brother Doug.

Officer McTeague knew Doug Welsch was wanted on a parole violation warrant, but before the arrest did not know where Doug was located. At the police station, Venita Ryan's purse was searched. A key to a room in the Los Gatos Lodge was found, and Venita told the officer that it was the key to the room where Doug Welsch was staying. The officer also received some information about Doug Welsch's whereabouts when he spoke to the children. They indicated that Doug was their daddy and that he was back at the motel room, but apparently they did not mention the name of the motel or the room number.

Based upon this information, the police went with Doug's parole officer to the Los Gatos Lodge and arrested Doug Welsch for parole violation. After a parole search he was transported to the police station. When confronted with the masks and gloves, Doug gave information about various criminal activities of the defendant, Stefan Constantine Negoescu. The trial court suppressed his proposed testimony concerning robberies and burglaries charged in the pending information.

At the time of the trial court ruling, there was some uncertainty about the circumstances under which a California court would be required to suppress the prospective testimony of a victim or witness when an illegal arrest or search had forged a connecting link between the witness and the defendant. The California Supreme Court had decided *People* v. *Teresinski* (1980) 26 Cal.3d 457 [162 Cal.Rptr. 44, 605 P.2d 874], in which the proposed testimony was suppressed. However, the United States Supreme Court had vacated the decision and remanded the matter for reconsideration in light of *United States* v. *Crews* (1980) 445 U.S. 463 [63 L.Ed.2d 537, 100 S.Ct. 1244]. The California Supreme Court has now reconsidered *Teresinski* and has reversed its position, deciding that the *Crews* decision should control interpretation of both the United States and California Constitutions. (*People* v. *Teresinski* (1982) 30 Cal.3d 822, 835-839 [180 Cal.Rptr. 617, 640 P.2d 753].)

In *Crews, supra*, 445 U.S. 463, three women were accosted and robbed in a restroom on the grounds of the Washington Monument during the first few days of January 1974. Descriptions given by all three

were similar. On January 9, 1974, an officer watching for the assailant detained the defendant and then took him to the police station, purportedly on a truancy charge, but in fact to question and photograph him in connection with the assault investigation. The *Crews* court concluded that the illegal conduct leading to the photograph identifications did not require suppression of in-court identification by the victim whose testimony resulted in a conviction.

The *Crews* court analyzed three distinct elements of the victim's in-court identification: (1) the victim's presence at trial; (2) the victim's ability to reconstruct the event and identify the defendant from observations of the crime; and (3) the defendant's presence in the courtroom for purposes of comparison. The court concluded that none of the three elements was "come at" by exploitation of the illegality. The victim's presence in court was the product of her report and description of the assailant; her identity was known long before the official misconduct. Her ability to give accurate testimony was based upon observations at the scene, not upon the photographic identification. And as for the defendant's presence at trial, the defendant himself is not a suppressible fruit; an illegal arrest, without more, has never been viewed as a bar to subsequent prosecution. (*United States* v. *Crews, supra,* 445 U.S. at pp. 471-474 [63 L.Ed.2d at pp. 545-547].)

In a portion of the opinion not joined by a majority of the justices, Justice Brennan opined that a defendant's person might be considered suppressible evidence if the police did not know his identity before an illegal arrest. (*Id.,* at pp. 474-476 [63 L.Ed.2d at pp. 545-549].) Under the facts of *Crews,* the court was not required to reach the point. However, five justices signed concurring opinions which indicated disagreement with Justice Brennan's dictum. (*Id.,* at pp. 477-479 [63 L.Ed.2d at pp. 549-551].)

■ The *Crews* decision resolves the issue presented here. The mere happenstance that part of the trail to Doug Welsch was marked by the illegally seized room key does not make his testimony at trial suppressible. The purposes of the exclusionary rule are fully satisfied by suppression of any tangible evidence seized in the illegal search. As stated by the *Teresinski* court, "[t]hat purpose would not be significantly furthered by additionally suppressing the testimony of a witness who was not discovered as a result of unlawful police conduct, and whose testimony rests upon his independent memory of the robbery." (*People* v. *Teresinski, supra,* 30 Cal.3d 822, 839, fn. omitted.)

Doug Welsch was a known parole violator sought by the police before the arrest took place. During the legal arrest of Peter Welsch and consent search of the car Doug's possible connection to burglary clothing was discovered. All that was supplied by the illegal search of Venita's purse was a quick way to locate Doug Welsch. The link supplied by the illegal conduct here was even less significant than the photo identification by the victims in *Crews*.

Let a peremptory writ of mandate issue compelling the Santa Clara County Superior Court to vacate its order suppressing the prospective testimony of Douglas Welsch.

White, P. J., and Scott, J, concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied June 3, 1982.