**The STATE of Utah, Plaintiff and Respondent,**

v.

**Theodore LEE, Jr., Defendant and Appellant.**

**No. 16566.**

Supreme Court of Utah.

June 30, 1981.

---

Robert Van Sciver, Edward K. Brass, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Craig L. Barlow, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

The defendant was charged and convicted of theft, a second-degree felony, in violation of § 76–6–404, Utah Code Ann. (1953), as amended, and burglary, a third-degree felony, in violation of § 76–6–202, Utah Code Ann. (1953), as amended. He appeals his conviction on the basis that the trial court's failure to suppress the stolen equipment taken from his camper-truck constituted a

denial of his constitutional right to be protected from unreasonable searches and seizures. The principal issue is whether an officer who, with the aid of a flashlight, looked into the windows of the camper-truck and saw stolen items conducted an illegal "search" within the constitutional meaning of the term.

On August 6, 1978, at about 11:00 p. m., Deputy Sergeant Dan Ipson of the Salt Lake County Sheriff's Office was driving north on Redwood Road in Salt Lake County in response to a call. As he passed a business called Joe's Mobile Homes, he noticed two people on the premises. After he answered the original call, he returned to the business area where he had seen the two persons to look for evidence of a burglary. There he observed a person, later identified as the defendant, looking around in a suspicious manner.

Sergeant Ipson then pulled his patrol car out onto Redwood Road. The defendant was not then in sight, but a camper-truck was parked nearby. The tires and hood of the truck were warm, indicating that it had recently been driven. Ipson looked into the camper portion of the truck and saw only a tire and some tool boxes. He then went to the cab of the truck, reached in, and removed the registration card which was attached to the sun visor. He discovered that the truck was owned by the defendant. He also obtained defendant's home address from one card. Ipson then continued his surveillance from across the street.

Shortly thereafter two men got into the truck and drove north on Redwood Road and then returned south. Sergeant Ipson then inspected several retail stores in the area for possible break-ins. Finding nothing, he drove to the defendant's home and observed the truck backed into the defendant's driveway with the front end meeting the public sidewalk. He then started up the front pathway to question the defendant about his earlier activities and looked into the windows of the truck and camper as he passed by. He noticed heavy equipment in the camper that had not been there earlier that evening. With the aid of his flashlight he was able to identify the equipment as an arc welder and several tool boxes.

Suspecting a burglary, Ipson immediately returned to the business area on Redwood Road where he had previously seen the camper-truck parked to make a more thorough search for possible break-ins. He also summoned other officers to aid in the investigation. About a quarter of a block from where he initially spotted the truck, Sergeant Ipson discovered that a window of a store was broken out. The store owner was called to the scene. He indicated that an arc welder and several tool boxes were missing. Since these were the same items Sergeant Ipson had observed in the back of defendant's truck, he requested other officers go to defendant's home to keep it under surveillance. They watched defendant's house until Sergeant Ipson arrived shortly after 1:00 a. m., when, without a warrant, he arrested the defendant and seized the evidence in the truck.

Defendant argues two propositions on appeal based on Article I, Section 14 of the Utah Constitution and Amendment IV of the United States Constitution. Those provisions are identical and state:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated . . . .

Defendant contends that the discovery of the stolen equipment in the truck constituted an unconstitutional search, and, second, that the subsequent seizure of the machinery without a warrant was unconstitutional.

■ Searches and seizures are per se unreasonable if concluded outside the judicial process and without a warrant, unless the exigencies of the situation justify an exception. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ We turn first to the contention that the officer's looking into the camper window and discovering the stolen articles constituted an illegal search. The key issue implicit in the contention is whether there was a search in the constitutional sense of

that term. It has long been the law that objects falling within the plain view of an officer from a position where he is entitled to be are not the subject of an unlawful search. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). "What a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." *Katz v. United States, supra*, 389 U.S. at 351, 88 S.Ct. at 511. For an officer to look at what is in open view from a position lawfully accessible to the public cannot constitute an invasion of a reasonable expectancy of privacy. *State v. Echevarrieta*, Utah, 621 P.2d 709 (1980); *United States v. Polk*, 433 F.2d 644 (5th Cir. 1970).

It makes no difference that there was no probable cause to make an arrest upon the officer's initial visit to defendant's residence. The open pathway to the front door was an implied invitation to members of the public to enter thereon. Even though the officer harbored a suspicion that criminal activity had occurred, that did not render unlawful his looking, without a warrant, at that which was in clear sight. *State v. Folkes*, Utah, 565 P.2d 1125 (1977).

■ The constitutional interests protected by the prohibition against unlawful searches do not require the police to be less observant than the average person. Nor must a police officer avert his gaze from contraband because a criminal wishes to avoid detection. A desire to avoid detection of criminal activity does not *ipso facto* give rise to a protectable privacy interest.

■ Thus, an officer is not expected to ignore what is exposed to observation from a position where he is lawfully entitled to be, and he may view the interior of a vehicle from such a position. That does not constitute a "search" within the meaning of the constitutional provisions.[1] *State v. Coffman*, Utah, 584 P.2d 837 (1978); *State v. Martinez*, 28 Utah 2d 80, 498 P.2d 651 (1972); *State v. Childs*, 110 Ariz. 389, 519 P.2d 854 (1974); *United States v. Polk*, 433 F.2d 644 (5th Cir. 1970).

■ The defendant placed the stolen property in the back of the camper-truck so that it was plainly visible through an unobstructed window of the camper and obvious to anyone who happened to be approaching defendant's front door. There is nothing in the circumstances that gave rise to a reasonable expectation of privacy. It was to be expected that the pathway to the front door might be used by strangers and that, should they do so, they might see into the camper. *State v. Wilbourn*, La., 364 So.2d 995 (1978), *cert. denied*, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979).

Having lawfully entered upon defendant's property for a purpose other than searching the truck, Ipson merely looked at that which was exposed through the window in the camper and open to his view. He observed equipment that had not been in the truck earlier that evening. This observation of the contents of the camper by looking through the window did not constitute a search, any more than observing the interior of a car through a window constitutes a search. *United States v. Johnson*, 506 F.2d 674 (8th Cir. 1974), *cert. denied*, 421 U.S. 917, 95 S.Ct. 1579, 43 L.Ed.2d 784 (1975); *Williams v. United States*, 404 F.2d 493 (5th Cir. 1968).

■ Furthermore, the use of a flashlight to assist the natural vision at night does not make an "observation" a "search." *United*

---

1. "Plain view" is the term uniformly given to the doctrine invoked as justification for seizing evidence without a warrant at the time of an arrest. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Commonwealth v. Accaputo*, —— Mass. ——, 404 N.E.2d 1204 (1980); *Reeves v. State*, Alaska, 599 P.2d 727 (1979). We use the term "open view" or "plain sight" to describe the applicable concept in the instant case and distinguish it from the "plain view" doctrine. See *State v. Coffman*, Utah, 584 P.2d 837 (1978); *Davis v. United States*, 327 F.2d 301 (9th Cir. 1964). The confusion engendered by use of the same term for different concepts is illustrated by the dissenting opinion's application of the requirement that the incriminating nature of the evidence must be immediately apparent. That is a requirement that must be met to justify a warrantless seizure incident to an arrest, see *Coolidge v. New Hampshire, supra*, under the "plain view" doctrine.

*States v. Lee,* 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927), which was cited with approval in *Katz v. United States,* 389 U.S. at 351, 88 S.Ct. at 511, is the seminal case. In *Lee* the Court stated:

> [N]o search on the high seas is shown. The testimony of the boatswain shows that he used a searchlight. It is not shown that there was any exploration below decks or under hatches.... [T]he cases of liquor were on deck and ... were discovered before the motorboat was boarded. Such use of a searchlight ... is not prohibited by the Constitution. [274 U.S. at 563, 47 S.Ct. at 748.]

■ Specifically it is not unconstitutional to use a flashlight to aid in viewing an automobile's interior. *United States v. Johnson,* 506 F.2d 674 (8th Cir. 1974); *Williams v. United States,* 404 F.2d 493 (5th Cir. 1968); *Daygee v. State,* Alaska, 514 P.2d 1159 (1973); *State v. Lafferty,* Me., 309 A.2d 647 (1973); *Scales v. State,* 13 Md.App. 474, 284 A.2d 45 (1971). We emphasize, however, that we do not deal here with the use of electronic or other equipment designed to enable the user to invade areas where exclusion of the public and protection of privacy are to be reasonably expected. See *Katz v. United States, supra.*

Since the search was not unconstitutional, the subsequent seizure could not be "fruit of the poison tree," and therefore suppressible. See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Nevertheless, defendant contends on appeal that the warrantless seizure of the stolen articles was unconstitutional irrespective of the constitutionality of the search. But the sole contention argued on the motion to suppress in the trial court, and in the supporting memorandum, was that the initial viewing of the contents of the defendant's truck was an illegal search and that therefore the items were tainted as fruit of the poisonous tree and suppressible.[2]

The asserted illegality of the seizure because of the failure of Ipson to obtain a warrant was not argued at the hearing on the motion to suppress, and the trial court did not address the issue which defendant now seeks to raise.[3] Compare however *Harris v. United States,* 390 U.S. 234, 88

---

2. Defendant, in his motion to suppress evidence, gave "notice of his intention to move to suppress certain evidence from introduction at his trial which was obtained as the result of a search and seizure in violation of the Fourth and Fourteenth Amendment...." The only argument made in his memorandum in support of the motion to suppress evidence was that

> The entry by Sgt. Ipson onto the Lee's property and peering into the camper owned by Ted Lee was an *unreasonable search* in contravention of the Fourth and Fourteenth Amendments to the U.S. Constitution, Article I, § 14 of the Utah Constitution. The officer intruded upon defendant's constitutionally protected expectation of privacy when he went onto defendant's property and peered in defendant's camper with no probable cause whatsoever to suspect him of criminal behavior. The lack of probable cause is sufficient to invalidate the search and suppress its fruits; yet if it were assumed for argument that there was probable cause to search, there was no excuse for a warrantless search of the truck.

This reference to a warrantless search and all allegations of an illegal search refer to the initial viewing of the interior of the truck.

3. Defendant's motion to suppress was denied in a memorandum decision stating in pertinent part: "[T]he opinion of the court that Sergeant Ipson's entry onto the defendant's property ... and his looking into the truck and camper shell owned by the defendant, both with and without the aid of a flashlight, was not an unreasonable search violative of the defendant's rights under the provisions of the Constitution of the United States and the Constitution of the State of Utah.... No physical entry was made or attempted to be made of the truck or camper by Sergeant Ipson and his initial viewing of the suspicious contents of the camper was made at a time when he was either on the sidewalk in front of the pickup truck or else was in an area where he was and because of his intention to go to the door and speak to the defendant. After observing the additional contents of the camper and believing that there was a possibility that it had been obtained in a theft or burglary Sergeant Ipson desisted from actually going to the front door of the residence and he withdrew to do further investigation and gained the assistance of other officers. Under these circumstances, the court does not regard the conduct of Sergeant Ipson at the time and place just described as constituting an unreasonable search."

S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Williams v. United States*, 404 F.2d 493 (5th Cir. 1968).

◼ Generally, this Court will not rule on an issue raised on appeal for the first time. *Jaramillo v. Turner*, 24 Utah 2d 19, 465 P.2d 343 (1970); *State v. Starlight Club*, 17 Utah 2d 174, 406 P.2d 912 (1965). This rule is particularly applicable to motions to suppress which should be supported by precise averments, not conclusory allegations. *Everhart v. State*, 274 Md. 459, 337 A.2d 100 (1975). As stated in *State v. Johnson*, 16 Or.App. 560, 519 P.2d 1053 (1974):

> At least as much specificity should be required in a pretrial objection to the admissibility of evidence, i. e., a motion to suppress, as is required in an oral objection made during the course of a trial. In fact, even more specificity could reasonably be required because the pretrial objection can be researched and written under relatively calm circumstances, as distinguished from an extemporaneous objection made in the heat of trial. [*Id.* 519 P.2d at 1057–58.]

◼ There is nothing in the record to indicate that the point now urged upon this Court was unavailable or unknown to defendant at the time he filed his motion to suppress, and to entertain the point now would be to sanction the practice of withholding positions that should properly be presented to the trial court but which may be withheld for the purpose of seeking a reversal on appeal and a new trial or dismissal.

◼ Generally, there is no justification for not presenting all available grounds in support of a motion to suppress, and in the absence of special circumstances, an appellate court will not rule on grounds not addressed in the trial court. *United States v. Castanon*, 453 F.2d 932 (9th Cir. 1972), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *United States v. Melendez*, 355 F.2d 914 (7th Cir. 1966); *Moreau v. State*, Alaska, 588 P.2d 275 (1978); *People*

*v. Sirhan*, 102 Cal.Rptr. 385, 7 Cal.3d 710, 497 P.2d 1121 (1972).

Affirmed. No costs awarded.

HALL and CROCKETT *, JJ., concur.

MAUGHAN, Chief Justice (dissenting).

For the following reasons, I dissent.

The majority, in my opinion, has circumvented the defendant's legitimate right to the protection provided by the Fourth Amendment and Article I, Section 14, of the Utah Constitution by relying on antiquated analysis and the inappropriate application of a procedural technicality.

Reasoning that the officer's observation of the interior of the camper, with the aid of a flashlight, was from a position not protected by the prohibition against unlawful searches and seizures the majority concludes the Sergeant's inspection of the camper did not constitute a search "in the constitutional sense." Reliance on this antiquated approach, which focuses attention on the position of the officer and whether or not the observation as accomplished as a result of a physical trespass, represents a critical misreading of current Fourth Amendment law.

In *Katz v. United States*,[1] the United States Supreme Court abandoned prior case law which relied upon the presence of a physical penetration into a constitutionally protected area to limit the scope of Fourth Amendment protection, and explained:

> "... once it is recognized that the Fourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures, it becomes clear that the reach of that amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure."

In contravention of this interdiction, the majority hinges the legality of the present search on the fact the officer made his observations from a position not protected by the prohibition against unlawful searches and seizures.

---

* Crockett, Justice, concurred in this case before his retirement.

1. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

This rationale, which renders the constitutionality of the intrusion dependent upon the position of the observer, totally ignores the teachings of *Katz* and the Fourth Amendment problems created by mechanically enhanced visual observations made from positions accessible to the public. To say the observation did not constitute a search because the officer in question was in a position where he was entitled to be not only resurrects archaic conceptualizations grounded in trespass notions, but also presents an unworkable standard for defining permissible police activity in relation to observations facilitated by telescopes, binoculars and other visual aids.

Rather than approaching Fourth Amendment analysis from the perspective of the officer's position, this Court should focus its attention on the defendant's expectations of privacy in relation to the objects or activities in question and whether or not those expectations are reasonable.[2] If we determine the defendant possessed a reasonable expectation of privacy in relation to certain objects or activities, we must then look to the activities of the law enforcement officials rather than the location of those officials to determine if the defendant's reasonably held privacy expectations have been encroached upon.

If it is established that a law enforcement official has encroached upon the defendant's reasonable expectation of privacy, whether by a physical, visual, auditory or any other type of perceptual intrusion, then a search has occurred. At that point, the attention of this Court should shift to the reasonableness of the search, i. e., whether it was accomplished pursuant to warrant, or justifiable without a warrant because of the exigencies of the particular circumstances and thus its constitutionality.

Thus, the appropriate starting point for any Fourth Amendment analysis is the defendant's expectations of privacy. The Supreme Court recognized the predominance of the individual's expectations of privacy in *Katz*, where it explained:

"For the Fourth Amendment protects people not places. What a person knowingly exposes to the public, even in his own home or office is not a subject of Fourth Amendment protection. [Citation] *But what he seeks to preserve as private, even in an area accessible to the public* may be constitutionally protected." [Emphasis added.] [3]

The prerequisites to the judicial recognition of a reasonable expectation of privacy, subject to Fourth Amendment protection, were outlined by Justice Harlan in his concurring opinion in *Katz* which has received widespread acceptance.[4] The first requirement set out by Justice Harlan is that the person exhibit an actual (subjective) expectation of privacy in relation to the area or items in question. The second requirement is that the expectation be one that society is prepared to recognize as reasonable.[5]

The question of whether or not an individual has exhibited a subjective expectation of privacy represents an objective determination requiring reference to the facts and circumstances of the particular case.[6]

2. See *State v. Kaaheena*, 59 Hawaii 23, 575 P.2d 462, 466 (1978); *United States v. Magana*, 512 F.2d 1169, 1170–71 (9th Cir. 1975).

3. The position oriented rationale employed by the majority in the present case and its conclusion that the presence of the officer in a position lawfully accessible to the public negates any expectations of privacy on the part of the defendant ignores the true import of the *Katz* decision.

4. *United States v. Bailey*, 628 F.2d 938 (6th Cir. 1980); *United States v. Mackey*, 626 F.2d 684 (9th Cir. 1980); *United States v. Agapito*, 620 F.2d 324 (2nd Cir. 1980); *State v. Dias*, Hawaii, 609 P.2d 637 (1980); *Norman v. State*, Fla., 379 So.2d 643 (1980); *State v. Dupuis*, La., 378 So.2d 934 (1979), cert. denied, 446 U.S. 993, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980); *State v. Christian*, 26 Wash.App. 542, 613 P.2d 1199 (1980); *Liichow v. State*, 288 Md. 502, 419 A.2d 1041 (1980).

5. *Katz*, supra note 1, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J. concurring).

6. See *Wattenburg v. United States*, 388 F.2d 853, 858 (9th Cir. 1968); cf. *State v. Wilbourn*, La., 364 So.2d 995 (1978), cert. denied, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979). In *Wilbourn* the Louisiana Supreme Court explained: "However, it is a particular individu-

In the present case, the specific items in question were contained within a camper which enclosed the bed of the defendant's pickup truck. The truck was backed into the defendant's driveway with the camper facing the house. Thus, the location of the truck and camper and the fact that the items were placed in the camper evidence an actual expectation of privacy over the contents of the camper.

In determining whether or not this expectation is reasonable or "one that society is prepared to recognize as 'reasonable,'" courts have focused attention on the place in which the defendant has exhibited the expectation.[7] The driveway upon which the items were located in the present case falls within the curtilage of the defendant's home. Although some courts would consider this fact dispositive,[8] adherence to the approach advanced in *Katz* eliminates any mechanical application of the curtilage doctrine and requires consideration of several factors before ascertaining whether an expectation of privacy is reasonable in relation to a particular place.[9] Among the numerous factors which must be considered are the location of the driveway, whether in a commercial or residential area, the existence or nonexistence and height of natural or artificial structures adjacent to the driveway and premises, the location of public or common private walkways adjacent to the premises, and other factors which relate to the particular facts of any case.[10]

However, the location of the items, while an important consideration, is not the only circumstance which must be considered before deciding whether or not the defendant's expectation of privacy is reasonable. Along with the nature of the place involved, our determination should include consideration of the precautions taken by the defendant to insure his privacy and the position of the law enforcement officer.[11]

In contrast, the analytical approach followed by the majority views the officer's position as the single determinative factor concerning the lawfulness of the intrusion.[12] This position is succinctly explained by the

al's right to privacy, not a particular place, which is protected by the constitution. Thus, it is appropriate to take into consideration the particular facts and circumstances, the total atmosphere of the case, in determining whether the constitutional right of privacy has been violated by an unauthorized entry into a part of the premises which is open to the public." Id. at 996.

7. See *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment." Id. pp. 143, 144, footnote 12, 99 S.Ct. pp. 430, 431); *United States v. Taborda,* 635 F.2d 131 (2nd Cir. 1980); While Justice Harlan agreed with the majority in *Katz,* supra note 1, that the Fourth Amendment protects people, not places, he recognized that there are places in which a person is "entitled to assume he will have privacy." Id. 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring).

8. *Sanders v. State,* 264 Ark. 433, 572 S.W.2d 397 (1978); *Norman v. State,* 134 Ga.App. 767, 216 S.E.2d 644 (1975) ("Prima facia", a search made within the curtilage of the owner without a warrant is unconstitutional and void." Id., 216 S.E.2d at 645).

9. *Wattenburg v. United States,* supra note 6, at 858; See *State v. Daugherty,* 94 Wash.2d 263, 616 P.2d 649 (1980); *State v. Kender,* 60 Hawaii 301, 588 P.2d 447 (1979); *United States v. Magana,* supra note 2, at 1171. ("It would be equally unwise to hold, as a matter of law, that all driveways are protected by the Fourth Amendment from all penetration by police officers as to hold that no driveway is ever protected from police incursions.").

10. See *State v. Kender,* supra note 9, 588 P.2d at 449–450; *State v. Ward,* Hawaii, 617 P.2d 568, 571–572 (1980); *People v. Sneed,* 32 Cal. App.3d 535, 108 Cal.Rptr. 146 (1973).

11. *State v. Kender,* supra note 9, 588 P.2d at 449; While the position of the officer is a factor to be considered in deciding whether the defendant's expectation of privacy is reasonable, that factor standing alone should not be determinative.

12. See *Latham v. Sullivan,* Iowa App., 295 N.W.2d 472 (1980); *Sumdum v. State,* Alaska, 612 P.2d 1018 (1980); *State v. Bennett,* Hawaii, 610 P.2d 502 (1980); *Pistro v. State,* Alaska, 590 P.2d 884 (1979); *State v. Miller,* 45 Or.App. 407, 608 P.2d 595 (1980).

California Superior Court in *Lorenzana v. Superior Court of Los Angeles County.*[13] In that case after reviewing a number of California cases, that Court stated:

"These cases clearly demonstrate the salutory rule of law that observations of things in plain sight made from a place where a police officer has a right to be do not amount to a search in the constitutional sense. On the other hand, when observations are made from a position to which the officer has not been expressly or implicitly invited, the intrusion is unlawful unless executed pursuant to a warrant or one of the established exceptions to the warrant requirement."[14]

This approach merely resurrects the archaic emphasis on property law concepts of trespass which was specifically rejected by the United States Supreme Court in *Katz.* Rather than trying to denominate some hard and fast rule based on this type of trespass-oriented analysis to deal with the everchanging factual situations presented by search and seizure cases, this Court should establish a modern analytical framework which can accommodate the problems resented by those various situations.

The realization that several factors, including the position of the officer, the position of the objects and the precautions taken by the defendant to insure his privacy must be weighed before the reasonableness of any expectation of privacy can be determined, represents the first step in establishing a useful analytical approach to deal with the various problems encountered in modern search and seizure cases.

Reference to the total atmosphere of the present case rather than merely the position of the officer and the fact the objects were observable, requires a conclusion contrary to that reached by the majority. The defendant's truck was located in his driveway. The truck was not parked on the street or on a public parking lot.[15] Thus, although the driveway in the instant case provided access to the front door of the defendant's residence, some degree of privacy in the interior of a camper located on that driveway should be recognized by society and this Court.[16]

Another important factor in the present case is the fact the objects in question were not found within the interior of the defendant's pickup cab, but rather were located in a camper which enclosed the bed of that vehicle.

The interior of motor vehicles has not been given the protection from warrantless intrusions which is afforded an individual's home. This is due in part to the lesser expectation of privacy generally associated with a vehicle. Thus, the Supreme Court has explained:

"One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as

---

**13.** *Lorenzana v. Superior Court of Los Angeles County*, 9 Cal.3d 626, 108 Cal.Rptr. 585, 511 P.2d 33 (1973); see also *People v. Thomas*, 112 Cal.App.3d 980, 169 Cal.Rptr. 570 (1980); But see *Phelan v. Superior Court of Mariposa County*, 88 Cal.App.3d 189, 151 Cal.Rptr. 599 (1979).

**14.** *Lorenzana v. Superior Court of Los Angeles County*, supra note 13, 108 Cal.Rptr. 585, 511 P.2d at 39.

**15.** This fact distinguishes the present case from *State v. Coffman*, Utah, 584 P.2d 837 (1978); and *State v. Martinez*, 28 Utah 2d 80, 498 P.2d 651 (1972) which the majority relies upon. In both those cases the observations occurred while the vehicles were parked in public places rather than on private property.

**16.** See *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In relation to the search of the automobile located in the defendant's driveway in *Coolidge*, Justice Stewart explained: " ... it seems abundantly clear that there is a significant constitutional difference between stopping, seizing and searching a car on the open highway, and entering private property to seize and search an unoccupied, parked vehicle not then being used for any illegal purpose." Id. at 463, note 20, 91 S.Ct. at 2036; cf. *State v. Koncir*, La., 367 So.2d 365 (1979); *People v. Farenga*, 42 N.Y.2d 1092, 399 N.Y.S.2d 651, 369 N.E.2d 1184 (1977).

one's residence or as the repository of personal effects." [17]

However, a camper, although located on a vehicle, more closely approaches the paradigm of the home in relation to privacy expectations. Thus, because a camper is specifically designed as a mobile residence and a repository for personal effects, the lesser expectation of privacy attributable to a motor vehicle should not be extended automatically to an attached camper.

Other factors to be considered in assessing the reasonableness of the defendant's exhibited expectation of privacy are the exposure of the items to the street and surrounding public area, including reasonable access routes to the house, and the nature of the intrusion complained of.[18] The facts of the present case indicate that, because of the location of the camper and the darkness, the objects were not identifiable from the sidewalk in front of the pickup where the officer first observed the items in the camper.

From that vantage point, the officer moved to a position by the side of the camper where he undertook a closer examination of the interior of the camper through a side window. This second observation was facilitated by the officer's use of a flashlight.

The fact the officer could not identify the objects without placing himself in a position where he could shine his flashlight through the window of the camper and the fact that once in that position only the use of the flashlight enabled him to identify the objects supports the reasonableness of the defendant's expectations of privacy in the area enclosed by the camper. Although the defendant should have expected the public would use a portion of the driveway for access to his front door, that alone does not destroy the reasonableness of expecting that those portions of the interior of the camper which fell outside the normal view of a person walking toward the front door, would not be open for public inspection.[19] An expectation that members of the public will not rummage through vehicles parked on a private driveway in the middle of the night with the aid of a flashlight is one that I believe "society is prepared to recognize as 'reasonable.' " [20]

The fact the items in question were observable through the window of the camper with the aid of a flashlight does not negate the reasonableness of the defendant's expectation of privacy.[21] The majority's

17. *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974).

18. See *State v. Daugherty,* supra note 9, 616 P.2d at 651; *United States v. Magana,* supra note 2, at 1171.

19. See *State v. Daugherty,* supra note 9, 616 P.2d at 652.

20. *Katz v. United States,* supra note 1, 389 U.S. at 361, 88 S.Ct. at 516.

21. The majority's reliance on *United States v. Lee,* 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927) for the proposition that the use of the flashlight in the present case does not render the officer's observation of a search typifies the trespass-oriented approach advanced by the majority. At the time the *Lee* opinion was rendered prevailing Fourth Amendment analysis depended heavily on property law and trespass concepts. Thus, of critical importance in the passage quoted by the majority are the facts; (1) there was no exploration below the deck of the motor boat; (2) the cases of liquor were observable on the deck; and (3) the contraband was discovered before the boat was boarded. However, more pertinent to the specific factual circumstances of the present case is the Supreme Court's decision in *Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932) which was decided just four years after *United States v. Lee.* In *Taylor* prohibition agents went to the defendant's residence to investigate complaints concerning illegal activities involving alcoholic beverages. Arriving at the residence about 2:30 p. m., the agents detected the odor of whiskey coming from a garage adjacent to the house. Aided by a searchlight, the agents looked through a small opening in the garage and saw many cardboard cases which they believed contained jars of liquor. They then broke the fastenings upon the garage door, entered and found over 100 cases of whiskey. Implicit in the Court's decision is the conclusion that the observation of the interior of the garage which was accomplished by shining a light through a small opening in the garage constituted a search, subject to Fourth Amendment protection. Comparing these two contemporaneous cases reveals the true focus of the Court's attention in *Lee* was the absence of any intrusion into a "constitutionally protected area" and the absence of any

statement that the objects observed in the camper were "obvious" is not supported by the facts of the instant case. The officer testified he could only see large objects which were not identifiable from his vantage point on the sidewalk and could only identify the objects after going to the camper's side window and illuminating the interior with his flashlight.

Therefore, the objects were not "plainly visible" to anyone who happened to be approaching the defendant's front door and the fact the items were identifiable after the Sergeant shined a light into the camper cannot justify the visual intrusion into the interior of the camper.[22]

There is necessarily a point in every search for physical evidence where that evidence will be in plain sight. Thus, when a briefcase or suitcase is opened the objects contained in it are observable in plain sight. Similarly, when a room or drawer is opened its contents fall into plain sight. However, in none of these situations have courts justified the search and subsequent seizure of those objects merely on the basis of the "clear" observation. Therefore, the fact an object is clearly visible at some point in time from some vantage point cannot be the determinative factor in any Fourth Amendment analysis, and the creation by the officer of a situation where objects come into open view should not convert to plain sight that which was reasonably expected to have been private.[23]

Once the court determines the defendant's expectation of privacy is reasonable, then its attention should shift to the question of whether or not the law enforcement official's activities constituted an intrusion upon that privacy expectation and, thus, a search subject to Fourth Amendment protection. In the vast majority of cases, this determination is simplified by the presence of a physical intrusion into a particular area. However, in a few cases, including the present, no physical intrusion has occurred, and the infringement on the expectation of privacy results from a visual intrusion.

That the Fourth Amendment protects visual as well as physical intrusions was pointed out in *United States v. Kim*,[24] where the court stated:

"There could be no question, ... that the protection recognized by *Katz* includes protection against unreasonable visual intrusions. [Citations] Visual intrusions can interfere with an individual's right to be left alone just as powerfully as the eavesdropping at issue in *Katz*.

Applying the protection recognized in *Katz* to visual observations accomplished without physical intrusion into "constitutionally protected" areas, various courts have concluded that the use of a telescope or binoculars to observe activities in a person's house constitutes a search.[25] In *LaDuke v. Castillo*,[26] the rationale of these cases was extended to a nighttime inspection of the interior of a house which was accomplished from outside the structure with the aid of a flashlight. Rejecting the Immigration and Naturalization Service's contention that the activities engaged in by its agents did not constitute a search for the purpose of Fourth Amendment protection, the court explained:

"In *Katz v. United States*, (citation) the Supreme Court held that government

---

expectancy of privacy rather than the use of the searchlight. The inappropriateness of continued reliance on the dicta in *Lee* in relation to visual intrusions is aptly explained in *United States v. Taborda*, supra note 7.

**22.** As Justice Stewart explained in *Coolidge v. New Hampshire*, supra note 16, 403 U.S. at 468, 91 S.Ct. at 2039; "... no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' " See also infra, note 31.

**23.** See *State v. Kaaheena*, supra note 2, 575 P.2d at 467.

**24.** *United States v. Kim*, 415 F.Supp. 1252, 1254 (D.Hawaii 1976).

**25.** *United States v. Taborda*, supra note 7; *State v. Ward*, supra note 10; *State v. Kender*, supra note 9; cf. *People v. Arno*, 90 Cal.App.3d 505, 153 Cal.Rptr. 624 (1979).

**26.** *LaDuke v. Castillo*, 455 F.Supp. 209 (E.D. Wash.1978).

agents are considered to have engaged in search activities when they intrude on an individual's privacy." [27]

The Supreme Court's adherence to the concept that any intrusion into an individual's reasonable privacy expectations is a search was recently reaffirmed in *Walter v. United States.*[28] In that case, an Atlanta corporation received by mistake a shipment of pornographic films. After opening the package containing the film and examining several individual film boxes, whose labels indicated the films contained obscene pictures, the employees of the corporation turned the entire shipment over to federal authorities. Although some of the individual boxes had been opened and attempts made by the employees to view the separate frames, a majority of the court agreed that the subsequent projection of the film by the federal agents constituted a search.[29]

Announcing the judgment of the court, Justice Stevens explained:

"Even though the case before us involves no invasion of the privacy of the home, and notwithstanding that the nature of the contents of these films was indicated by descriptive material on their individual containers, we are nevertheless persuaded that the unauthorized exhibition of the films constituted an unreasonable invasion of their owner's constitutionally protected interest in privacy. *It was a search* ; there was no warrant; the owner had not consented; and there were no exigent circumstances." [30] [Emphasis added].

Therefore, in *Walter v. United States* the Supreme Court concluded a search occurred notwithstanding the fact the federal agents were lawfully in a position where they had a right to be when they viewed the films and had probable cause to believe that the films which were delivered to them in "open view" constituted incriminating evidence.[31] Thus, although the federal officials observed objects in "open sight" from a position where they were entitled to be, the Court held the visual intrusion constituted a search.

That case and other similar cases involving visual intrusions,[32] illustrate the analytical inadequacy of a trespass-oriented approach to modern search and seizure problems. Rather than clinging to archaic conceptualizations tied to the position of the law enforcement official and his physical intrusion into some protected area, we must develop an analytical standard which encompasses all types of intrusions into an individual's privacy.[33]

Recognizing that visual intrusions as well as physical intrusions represent a real danger to the privacy of our citizenry is a crucial step in developing a workable standard to deal with the diverse problems presented by modern search and seizure questions. However, in order to accommodate the necessities of effective law enforcement, a distinction must be recognized between passive observations and visual intrusions necessitating Fourth Amendment protection.

27. Id. at 211.

28. *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980).

29. Although a plurality decision, a majority of the court agreed with Justice Stevens' conclusion that the viewing of the film which was rendered possible by the use of a projector constituted a search subject to Fourth Amendment protection.

30. *Walter v. United States*, supra note 28.

31. Justice Stevens explained in *Walter v. United States*, supra note 28, 100 S.Ct. at 2402, footnote 10; "The fact that the labels on the boxes established probable cause to believe the films were obscene clearly cannot excuse the

failure to obtain a warrant; for if probable cause dispensed with the necessity of a warrant one would never be needed." See *Coolidge v. New Hampshire*, supra note 16, 403 U.S. at 468, 91 S.Ct. at 2039.

32. See cases cited in note 25, supra.

33. See *Cardwell v. Lewis*, supra note 17; In *Jones v. United States*, 357 U.S. 493, 498, 78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514 (1958) the Supreme Court explained: "The decisions of this Court have time and again underscored the essential purpose of the Fourth Amendment to shield the citizen from unwarranted intrusion into his privacy."

In the cases which recognize the law enforcement official's observation of some item or activity in "open sight" constituted a search, the officer used a device or assumed a position which enabled him to accomplish the intrusion.[34] Similarly, other cases while ostensibly relying on the officer's position at the time of the observation have struck down as unconstitutional observations occurring after some activity of the officer rendered the observation available.[35] Thus, a common factor emerges from these cases which provides an objective criterion differentiating between simple observations and visual intrusions.

Applying this criterion, a visual intrusion and therefor a search, subject to Fourth Amendment protection, occurs whenever the law enforcement official's observation into an area in which the defendant has a reasonable expectation of privacy is made possible or enhanced by activities of the officer directed at that result.[36] Utilization of this analytical approach eliminates the necessity of employing any trespass-oriented analysis and provides an easily understandable objective standard for the lower courts and law enforcement officials.

Application of this standard to the facts of the present case illustrates the distinction to be drawn between permissible passive observations and visual intrusions subject to constitutional scrutiny. When Sergeant Ipson arrived at the defendant's house he observed from a vantage point in front of the truck, the outline of objects located in the attached camper. At this point, the officer had done nothing to intrude upon the privacy of the defendant. However, rather than proceeding to the defendant's front door as he allegedly initially planned to do, the officer moved from his position in front of the truck to a vantage point next to the camper window, where with the aid of his flashlight he conducted a general inspection of the interior of the camper. This second intrusion which resulted in the identification of the contents of the camper, like the investigation of the contents of the film in *Walter v. United States*,[37] represents a significant expansion of the prior observation and a purposeful intrusion into the defendant's reasonable expectation of privacy. Thus, the officer's observations from the second vantage point, which were enhanced by both the officer's position and the use of the flashlight, should be considered a search.

Because not all searches and seizures violate the Fourth Amendment, recognition of the fact that the officer's intrusion in the present case constitutes a search marks the beginning rather than the end of the necessary analysis. Only those searches and seizures which are determined to be "unreasonable" are proscribed by the Constitution. However, in understanding what constitutes an unreasonable search or seizure the admonition of Mr. Justice Frankfurter is most relevant:

> "To say that the search must be reasonable is to require some criterion of reason.

**34.** See *Walter v. United States*, supra note 28 (film projector); *United States v. Taborda*, supra note 7 (telescope and binoculars from vantage point in nearby building); *LaDuke v. Castillo*, supra note 26, (flashlight); *United States v. Kim*, supra note 24 (telescope from building); *State v. Ward*, supra note 10 (binoculars from building); *State v. Kender*, supra note 9 (telescope from position on top of neighbors fence); *State v. Kaaheena*, supra note 2, (standing upon boxes outside building).

**35.** E. g., *State v. Daugherty*, supra note 9 (officers movement upon driveway rendered subsequent observation unconstitutional); *Bunn v. State*, 153 Ga.App. 270, 265 S.E.2d 88 (1980) (position near apartment not used by public); *State v. Alexander*, 170 N.J.Super. 298, 406 A.2d 313 (1979) (leaning out from fire escape to apartment window); *Lorenzana v. Superior Court of Los Angeles County*, supra note 13, (moving from common walkway to position next to window); *State v. Osborn*, 63 Ohio Misc. 17, 409 N.E.2d 1077 (1980) (moving from driveway to backyard and kennels).

**36.** This approach is supported by Justice Stevens' rationale in *Walter v. United States*, supra note 28, 100 S.Ct. at 2400, that the "further investigation" into the contents of the film which was necessary "in order to obtain the evidence which was to be used at trial," constituted an intrusion into the defendant's expectation of privacy and thus a search subject to Fourth Amendment protection.

**37.** *Walter v. United States*, supra note 28.

It is no guide at all either for a jury or for district judges or the police to say that an 'unreasonable search' is forbidden—that the search must be reasonable. What is the test of reason which makes a search unreasonable? The test is the reason underlying and expressed by the Fourth Amendment: the history and the experience which it embodies and the safeguards afforded by it against the evils to which it was a response. There must be a warrant to permit search, barring only inherent limitations upon that requirement when there is a good excuse for not getting a search warrant, . . ." [38]

Thus, recognition of the historical foundation of the Amendment and the realization that the right of privacy is to precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals [39] has lead the United States Supreme Court to the realization that "when the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." [40] That fundamental premise provides the foundation for that Court's proclamation:

" 'Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial process,' *United States v. Jeffers*, 342 U.S. 48, 51, [72 S.Ct. 93, 95, 96 L.Ed. 59]. and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." [41]

Following this mandate, the State must prove [42] the circumstances of the present case fall within one of the "jealously and carefully drawn" exceptions to the warrant requirement and, therefore, establish that. the intrusion was not "unreasonable" in the constitutional sense.

The State contends the present search falls within the "plain-view" exception to the warrant requirement. The factual prerequisites for the application of the "plain-view" doctrine were set forth by the United States Supreme Court in *Coolidge v. New Hampshire*.[43] In articulating the scope of this exception Justice Stewart delineated a triparte standard limiting its reach to situations where:

"(1) the initial intrusion which offers the authorities the plain view is lawful;

"(2) the discovery of the evidence is inadvertent; and

**38.** *United States v. Rabinowitz*, 339 U.S. 56, 83, 70 S.Ct. 430, 443, 94 L.Ed. 544 (1950) (dissenting opinion); see also *Chimel v. United States*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

**39.** *McDonald v. United States*, 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

**40.** *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); see also *United States v. United States District Court*, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972); Thus, that Court has explained: ". . . the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home." *McDonald*, supra note 38, 335 U.S. at 456, 69 S.Ct. at 193; see also *Wong Sun v. United States*, 371 U.S. 471, 481–482, 83 S.Ct. 407, 413–414, 9 L.Ed.2d 441 (1963).

**41.** *Katz v. United States*, supra note 1, 389 U.S. at 357, 88 S.Ct. at 514, (footnotes omitted); see also *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 352–353, 97 S.Ct. 619, 628, 50 L.Ed.2d 530 (1977); *Camara v. Municipal Court*, 387 U.S. 523, 528–529, 87 S.Ct. 1727, 1730–1731, 18 L.Ed.2d 930 (1967); ("[O]ne governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." See *Coolidge v. New Hampshire*, supra note 15.

**42.** *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970); ("The burden rests on the State to show the existence of such an exceptional situation."); *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). (". . . the burden is on those seeking the exemption to show the need for it.")

**43.** *Coolidge v. New Hampshire*, supra note 15, 403 U.S. at 466, 91 S.Ct. at 2038.

"(3) the incriminating nature of the evidence is 'immediately apparent.' " [44]

The State did not introduce any evidence at the suppression hearing or argue on appeal that the incriminating nature of the items found in the camper was immediately apparent to Sergeant Ipson. Therefore, it has failed to establish the applicability of the plain view exception in the present case.[45]

If the incriminating nature of the objects observed is not immediately apparent to the police officer, then the necessity of immediate action directed at those objects is eliminated and the exigency which would justify an extension of the initial observation is absent. If the incriminating nature of the items had been immediately apparent to Sergeant Ipson from his vantage point on the sidewalk, or had some other exigency existed,[46] then he would have been justified in extending the original observation and either examining the objects more closely or seizing them.[47] However, no recognizable gain in effective law enforcement is effec-

---

**44.** See *United States v. Rodriguez*, 596 F.2d 169 (6th Cir. 1979); *United States v. Schire*, 586 F.2d 15 (7th Cir. 1978); *United States v. Jackson*, 576 F.2d 749 (8th Cir. 1978).

**45.** Instead of addressing the recognized requirements of the "plain-view" doctrine, the State presents what the majority refers to as the "plain-sight" or "open-view" exception extracted from *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) and the statement: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure or may be introduced into evidence." Id. at 236, 88 S.Ct. at 993.

My criticism concerning adoption of this position oriented approach as a new exception to the per se rule has been previously explained in this dissent. However, I also dissent from the majority's interpretation of the Supreme Court's statement in *Harris v. United States*.

The majority's reliance on *United States v. Johnson*, (506 F.2d 674 (8th Cir. 1974), cert. denied, 421 U.S. 917, 95 S.Ct. 1579, 43 L.Ed.2d 784 (1975) in support of its "plain sight" exception, illustrates the majority's misreading of the position articulated in *Harris v. United States*. In *Johnson*, the Eighth Circuit explained: "Under the 'plain view' doctrine, a plain view observation made by a police officer from a position where the officer is entitled to be is not a 'search' within the meaning of the Fourth Amendment. Consequently, the restrictions of the Fourth Amendment are not applicable." Id. at 675. (Citing to *Harris v. United States*.)

While this passage ostensibly supports the majority's position, the Eighth Circuit Court subsequently interpreted that statement in *United States v. Wilson*, 524 F.2d 595 (8th Cir. 1975). In *Wilson*, the Eighth Circuit Court while citing to *United States v. Johnson*, explained: "A plain view observation is not a search within the meaning of the Fourth Amendment and thus is not subject to the restrictions attendant to the constitutional provision." *Wilson*, supra at 598.

However, that court went on to explain: "In order to qualify for inclusion within the plain view exception it must be shown (1) that the initial intrusion which afforded the authorities the 'plain view' was lawful; (2) that the discovery of the evidence was inadvertent; and (3) that the incriminating nature of the evidence was immediately apparent." Id. at 598. (Citing *United States v. Williams*, 523 F.2d 64, (8th Cir. 1975)).

Thus, the Eighth Circuit Court of Appeals recognized in *Wilson* that the plain view exception to the per se rule as set forth in *Harris v. United States* and *United States v. Johnson*, encompasses the triparte standard that Justice Stewart outlined in *Coolidge v. New Hampshire*, and does not establish a separate exception to the per se rule.

**46.** See *Michigan v. Tyler*, supra note 41; *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

**47.** When the police must establish by further investigation the incriminating nature of an article or activity, the underlying exigencies presented by the "plain-view" exception are eliminated. The intrusion, thus, becomes in essence, general search for possible evidence which is constitutionally unlawful. See *State v. Luna*, 93 N.M. 773, 606 P.2d 183, 189 (1980) ("Here, at the time the speakers were first seen, their incriminating nature was not apparent, and at the time they were seized, the discovery was no longer inadvertent. The speakers, and anything else discovered as a result of this search should be suppressed as evidence.") *People v. Richie*, 77 A.D.2d 667, 430 N.Y.S.2d 154, 155 (1980) ("Even though it appears that the pipe was in plain view, it cannot be said that it was immediately apparent that the pipe was either evidence or contraband. (Cf. *Coolidge v. New Hampshire*, [supra note 15]. Accordingly, having concluded that the search was unlawful, the fruits of that unconstitutional search must be suppressed.") See also *United States v. Clark*, 531 F.2d 928 (8th Cir. 1976); *United States v. Corbin*, 494 F.Supp. 244 (M.D. N.C.1980).

tuated by allowing the officer in this case to move from his vantage point on the sidewalk to a position next to the camper and examine the interior of the camper with the aid of a flashlight at the expense of the defendant's reasonable expectation of privacy.

The State has failed to establish a factual basis rendering the plain view or any other recognized exception to the warrant requirement applicable in the present case. Rather, by the resurrection of antiquated trespass-oriented analysis and the creation of a "plain-sight" exception to the per se rule, the majority has effectively circumvented the exigency requirement establishment by modern Fourth Amendment adjudication.[48] For the reasons previously stated I cannot accept this analytical approach nor join in the creation of this exception to the warrant requirement. The evidence uncovered by the officer's extension of his initial observation was tainted by the illegality of the warrantless search and thus should have been excluded from consideration at trial.[49]

Notwithstanding the issue of the constitutionality of the officer's examination of the interior of the camper, this Court should consider the legality of the subsequent seizure of the items located in the camper.

At the suppression hearing the defendant argued the seizure was unconstitutional because it was tainted by the prior illegal search. However, in his brief and argu-

ment before this Court he advanced a second theory in which he argued the seizure was unconstitutional because it was accomplished without a warrant. Thus, the defendant has presented a new legal argument in support of his motion to suppress which the majority has refused to address on the grounds "this Court will not rule on an issue raised on appeal for the first time." This refusal to apply the new theory presented on appeal is unjustifiable in the present case.

While as a general rule legal theories not presented to the trial court will not be considered by the Supreme Court for the first time on appeal, this rule is not inexorable and has several recognized exceptions.

Courts have refused to apply this general rule in cases where the facts are not disputed and the parties merely present a new legal argument on appeal.[50] Because the present case was tried on a stipulated set of facts and the argument of the defendant on appeal merely presented new legal reasoning in support of his contention that the seizure was unconstitutional, the present case falls within this exception to the general rule.

Courts have also acknowledged another exception to the general rule, which is particularly applicable in criminal cases. Specifically, in cases which involve the deprivation of life or liberty, reviewing courts have considered questions raised for the first

**48.** As the Supreme Court explained in *McDonald v. United States,* supra note 39, 335 U.S. at 456, 69 S.Ct. at 193: "We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative." See *Trupiano v. United States,* 334 U.S. 699, 68 S.Ct. 1299, 92 L.Ed. 1663 (1948).

**49.** See *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

**50.** See *UFITEC, S. A. v. Carter,* 20 Cal.3d 238, 142 Cal.Rptr. 279, 571 P.2d 990 (1977); see also *Williams v. Washington Metropolitan Area Transit Comm.,* 415 F.2d 922, 954 (footnote 181) (D.C.Cir.1968) cert. denied, 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969); *Chase National Bank of City of New York v. United States,* 116 F.2d 625, 628 (2nd Cir. 1940); cf. *Dewey v. Des Moines,* 173 U.S. 193, 19 S.Ct. 379, 43 L.Ed. 665 (1899). Thus, while ordinarily a party may not change his theory and deprive his opponent of an opportunity to meet an issue in the trial court, this rule has been held not to apply when the facts are not disputed and the parties merely raise a new argument presenting applicable law. See *Burdette v. Rollefson Construction Company,* 52 Cal.2d 720, 344 P.2d 307, 310 (1959); see also *Meuse-Rhine-Ijssel Cattle Breeders of Canada Ltd. v. Y–Tex Corporation,* Wyo., 590 P.2d 1306, 1309 (1979) ("It is not considered a new issue to consider additional relevant authority on the disposition of a case. . . . There is no reason to keep secret the proper law applicable to cases just because overlooked.").

time on appeal if that is necessary to serve the ends of substantial justice or prevent the denial of fundamental rights.[51] This exception to the general rule is a salutary one molded by the necessities of justice [52] and the fair resolution of legal questions concerning the fundamental rights of the parties.[53]

The invocation of this exception is particularly appropriate when the question presented for the first time on appeal involves the deprivation of a constitutional right.[54] The constitutional rights of individuals accused of criminal activity should not be inadvertently waived by the failure of the individual's legal counsel to argue every conceivable legal position at the trial level. Strict adherence to a procedural practice which permits such a result presents a sad mockery of justice and should not be condoned by this court.[55]

The inviolability of a constitutional right should be more precious to this Court and the citizens of this State than the punishment of any one individual. A conviction which rests on such a flagrant disregard of a constitutional right cannot be allowed to stand without rendering this Court in willful disobedience of ·the Constitution which its members are sworn to uphold.[56]

In the present case, this Court does not have to raise the constitutionality of the warrantless seizure sua sponte. The constitutionality of the seizure was raised in the pretrial motion to suppress and the defendant's new legal arguments in support of that contention were included in his brief and argument before this Court. Thus, the State had sufficient notice of the defendant' position on appeal and an opportunity to address his legal arguments.

Because the defendant's new argument involves no factual questions and merely presents to this Court a second legal analysis in support of his contention that his fundamental constitutional right to be free from unreasonable searches and seizures was violated, I believe this Court has a duty to respond to this argument

In addition to what I perceive to be a misapplication of a procedural technicality, the majority adopts the position that: "[m]otions to suppress ... should be supported by precise averment, not conclusory allegations." While this procedural requirement may be appropriate in cases involving searches and seizures conducted pursuant to a warrant and when required by local legislation as in *State v. Johnson*,[57] it should not be extended to cases involving warrantless intrusions.

The problem with the majority's application of this procedural requirement in the

---

**51.** *Maynard Investment Co. v. McCann*, 77 Wash.2d 616, 465 P.2d 657 (1970); see also *Halldorson v. Halldorson*, 175 Mont. 170, 573 P.2d 169, 171 (1977); *City of Columbus v. Rogers*, 41 Ohio St.2d 161, 324 N.E.2d 563 (1975); *Commonwealth v. Wadley*, 169 Pa.Super. 490, 83 A.2d 417 (1951); *Pine Grove Nevada Gold Mining Co. v. Freeman*, 63 Nev. 357, 171 P.2d 366 (1946).

**52.** See *State v. Schad*, 24 Utah 2d 255, 470 P.2d 246, 248 (1970) ("However, we recognize that if it appears that the interests of justice so require, this court may review claimed errors even in the absence of a proper objection."); see also *Earl M. Jorgensen Co. v. Mark Construction Inc.*, 56 Hawaii 466, 540 P.2d 978 (1975).

**53.** As the Washington Supreme Court explained in *Maynard Investment Co. v. McCann*, supra note 51, 465 P.2d at 661; "Courts are created to ascertain the facts in a controversy and to determine the rights of the parties according to justice. Courts should not be con-

fined by the issues framed or theories advanced by the parties if the parties ignore the mandate of a statute or an established precedent. A case brought before this court should be governed by the applicable law even though the attorneys representing the parties are unable or unwilling to argue it."

**54.** See *Desert Chrysler-Plymouth, Inc. v. Chrysler Corp.*, 95 Nev. 640, 600 P.2d 1189, 1191 (1979); *State v. Kaliman*, 10 Wash.App. 41, 516 P.2d 1096 (1973).

**55.** Cf. *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936).

**56.** See *Elkins v. United States*, 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *State v. Sheldon*, Utah, 545 P.2d 513, 515 (1976) (Maughan, Justice, dissenting).

**57.** *State v. Johnson*, 16 Or.App. 560, 519 P.2d 1053 (1974).

present case, which involves a warrantless seizure, is that it relieves the State of its burden of proof. The United States Supreme Court and a majority of State courts have recognized that the burden of proving the constitutionality of a warrantless search and seizure falls upon the State.[58] As the New York Court of Appeals explained in *People v. Calhoun:* [59]

"... a warrantless intrusion by a governmental official is presumptively unreasonable, the burden of justifying it devolving upon the people." [60]

The burden is initially on the defendant to raise the issue of illegally obtained evidence and in the absence of evidence to the contrary it is presumed the law enforcement officials acted legally.[61] However, when the defendant presents a prima facia case which raises the illegality of the warrantless search or seizure, then the burden shifts to the prosecution to justify the absence of adherence to the required judicial process.[62]

The distinction between a case involving a warrantless search and seizure such as the

present, and the factual situation found in *State v. Johnson,*[63] upon which the majority relies so heavily, was expressly pointed out by the Supreme Court of Oregon in *State v. Miller,*[64] where it explained:

"In considering the sufficiency of the motions to suppress in this case it must be kept in mind that a search and seizure without a warrant is per se unreasonable and that the state has the burden to establish the legality of the search [or seizure] in such a case. This is not a case involving a search based upon a search warrant supported by an affidavit stating the facts upon which the warrant was based. In such a case the defendant has the burden of establishing the insufficiency or untruth of the facts stated in the affidavit supporting the search warrant. (Citation omitted.)

"It follows that a motion to suppress evidence seized during a search without a warrant, supported by an affidavit stating that the search and seizure was made without a warrant, is sufficient to place the burden upon the state."

**58.** See *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Vale v. Louisiana*, supra note 42, 399 U.S. at 34, 90 S.Ct. at 1971; see e. g., *Wilson v. Health and Hospital Corporation of Marion County*, 620 F.2d 1201 (7th Cir. 1979); *United States v. Hoffman*, 607 F.2d 280 (9th Cir. 1979); *Brett v. United States*, 412 F.2d 401 (5th Cir. 1969); *State v. Linscott*, Me., 416 A.2d 255 (1980); *Chilton v. State*, Alaska, 611 P.2d 53 (1980); *Nelson v. State*, Nev., 609 P.2d 717 (1980); *State v. Dias*, Hawaii, supra note 4; *State v. Tomasetti*, La., 381 So.2d 420 (1980); *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975); *Sitsler v. State*, Okl. Cr., 603 P.2d 1142 (1979); *State v. Marcum*, 24 Wash.App. 441, 601 P.2d 975 (1979); *State v. Kelgard*, 40 Or.App. 205, 594 P.2d 1271 (1979); *People v. Mason*, 22 Mich.App. 595, 178 N.W.2d 181 (1970).

**59.** *People v. Calhoun*, 49 N.Y.2d 398, 426 N.Y. S.2d 243, 402 N.E.2d 1145, 1147 (1980).

**60.** Similarly, the Oregon Court of Appeals explained in *State v. Kelgard*, supra note 58, 594 P.2d at 1273; "A warrantless search and seizure is per se an unreasonable government intrusion and the state has the burden of establishing the validity of such an intrusion."

**61.** See *People v. Carson*, 4 Cal.App.3d 782, 84 Cal.Rptr. 699, 702 (1970); *People v. Whitehurst*, 25 N.Y.2d 389, 306 N.Y.S.2d 673, 254

N.E.2d 905, 906 (1969); see also *Cooper v. State*, Okl.Cr., 599 P.2d 419 (1979). Failure to move to suppress evidence considered to be illegally obtained constitutes a waiver of the protections afforded by the Fourth Amendment in relation to that evidence. See *United States v. Robinson*, 470 F.2d 121 (7th Cir. 1972); *United States v. Ceraso*, 467 F.2d 653 (3d Cir. 1972). However, the defendant fulfilled this procedural requirement when he moved to suppress the evidence. In that motion he specifically moved "to suppress evidence from introduction at his trial which was obtained as a result of the search and seizure in violation of the Fourth and Fourteenth Amendments...." Thus, the constitutionality of the seizure was put in question and the burden should have been on the State to prove the legality of its activities.

**62.** See *State v. Sauve*, 112 Ariz. 576, 544 P.2d 1091 (1976); *People v. Superior Court of Los Angeles County*, 7 Cal.3d 186, 101 Cal.Rptr. 837, 496 P.2d 1205 (1972); *People v. Johnson*, 68 Cal.2d 629, 68 Cal.Rptr. 441, 440 P.2d 921 (1968).

**63.** *State v. Johnson*, supra note 57.

**64.** *State v. Miller*, 269 Or. 328, 524 P.2d 1399, 1402 (1974).

Thus, in cases involving searches and seizures conducted without a warrant a general averment of unconstitutionality supported by evidence indicating a warrantless intrusion is sufficient to place the burden of proving the necessity of an exception from the "per se" rule on the State.[65] Therefore, in this case, which involves a warrantless search and seizure, the procedural requirement advanced by the majority is inapplicable.

This conclusion is supported by the California Supreme Court's decision in *Badillo v. Superior Court in and for the City and County of San Francisco*.[66] In *Badillo*, Justice Traynor speaking for the Court, outlined the appropriate procedural requirements for a case involving a warrantless search and seizure, when he stated:

"When, however, the question of the legality of an arrest or of a search and seizure is raised either at the preliminary hearing or at the trial, the defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a search warrant, and the burden then rests on the prosecution to show proper justification." [67]

In the present case the defendant has fulfilled this procedural requirement and has presented a prima facie case. Specifically, the evidence introduced at the evidentiary hearing and reviewed in both the defendant's and State's memorandum following that hearing established that private premises were entered and a subsequent seizure made without a search warrant.[68] Thus, a presumption of illegality stemming from the warrantless seizure was created and the burden of proving that the exigencies of the situation required exemption from the warrant requirement shifted to the State. The State, therefore, had the burden of going forward with evidence justifying the warrantless seizure and their failure to present any evidence or arguments justifying the absence of a warrant should have resulted in the exclusion of the evidence in question at the trial.[69]

However, rather than recognizing the fact that the burden falls upon the State to justify its actions, the majority holds that the defendant's failure to specifically aver facts and arguments in support of its contention that the warrantless search was illegal constitutes an implied waiver of Fourth Amendment rights. Adoption of this procedural requirement in the present case relieves the State of its recognized burden of justifying the absence of a warrant. Under this procedure, as illustrated by the cases which involve a search or seizure conducted with a warrant, the State is merely required to rebut the specific theories advanced by the defendant who must prove the illegality of the warrant. Application of this procedure in the present case excuses the State from its failure to present evidence or arguments to justify the warrantless intrusion and completely ignores the presumption created by the per se rule.

Because I believe that the presumption of illegality created by the absence of a warrant is a vital part of Fourth Amendment jurisprudence, I will not join in its elimination. Therefore, I cannot support the adoption of this procedure in the present case, nor the conclusion that the defendant's failure to particularize his argument in relation to the warrantless seizure constituted a waiver of his Fourth Amendment

---

65. See *People v. Valdez*, 173 Colo. 410, 480 P.2d 574, 575 (1971).

66. *Badillo v. Superior Court in and for the City and County of San Francisco*, 46 Cal.2d 269, 294 P.2d 23 (1956).

67. Id. 294 P.2d at 25.

68. The State's memorandum in opposition to the motion to suppress explained in its Statement of Facts: "Sergeant Ipson testified that he and his men returned to defendant's residence in North Dorthea Way, arrested defendant, entered the camper-shell portion of the pickup truck and seized the items which the defendant seeks by his Motion, to suppress. Sergeant Ipson testified that at no time did he have a search warrant. . . ."

69. See *People v. Valdez*, supra 65, 480 P.2d at 575.

protection from warrantless searches and seizures. Because the per se rule places the burden of proving the legality of a warrantless seizure on the State and not the illegality of such a seizure on the defendant, I believe this Court should address the defendant's contentions concerning the unconstitutionality of the seizure. I therefore dissent.

Although, I believe the subsequent seizure of the items found in the camper was unconstitutional because of the absence of a warrant or any exigent circumstances justifying a warrantless seizure, I compliment the police officer involved for recognizing the necessity of a warrant and contacting the County Attorney before seizing the items. While I believe the County Attorney's conclusion that no warrant was required was incorrect, the action of the police officer in requesting advice was commendable.

WILKINS, J.,* concurs in the dissenting opinion of MAUGHAN, C. J.

* Wilkins, Justice, acted on this case prior to his resignation.